[Civ. No. 36154. Second Dist., Div. Five. July 17, 1970.]

DEWEY MERRITT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RESERVE INSURANCE COMPANY, Real Party in Interest.

## Counsel

Horvitz & Minikes and Ellis J. Horvitz for Petitioner.

No appearance for Respondent.

Fine & Pope, Alexander H. Pope, Irell & Manella, Charles H. Phillips and John Gaims, Richard H. Borow and George T. Caplan for Real Party in Interest.

## Opinion

**SELBER, J.**\*—Petitioner seeks a writ of mandate, prohibition or other appropriate relief from an order of respondent superior court requiring petitioner to give further answers to certain interrogatories.

A brief statement of the facts is essential to an understanding of the discovery issues involved in this proceeding. On or about March 22, 1966, petitioner, as plaintiff, filed an action against Reserve Insurance Company and Stuyvesant Insurance Company in the respondent court. The complaint in that action alleges that petitioner had previously obtained a judgment against J. A. Stafford Trucking Company and Salvadore Bernal in Los Angeles Superior Court case No. 773931 for personal injuries in the sum of $434,441.68; that Reserve Insurance Company (real party in interest herein) had issued a policy of liability insurance in favor of said defendants in that action;[1] and that said insurance companies negligently and in bad

---

\*Assigned by the Chairman of the Judicial Council.

[1]The policy limit was $100,000.

faith failed to protect the interest of their said insureds.[2] It is further alleged therein that the said defendants, Stafford and Bernal, individually assigned to petitioner any claims which they might have against the carriers. Thus, in effect, the cause of action is a claim against an insurance company for satisfaction of the judgment in excess of the policy limits for wrongful failure by said insurance company to settle the claim within policy limits. In the original personal injuries action petitioner was both the plaintiff and a cross-defendant, the defendant therein having filed a cross-complaint. He was represented on his complaint by the law firm of Magana, Olney, Levy and Cathcart, among others, and as a cross-defendant by the law firm of Longenecker and Estes. It is undisputed that by the time of the trial of the original action petitioner had received substantial benefits by way of workmen's compensation and that Longenecker and Estes were also the attorneys for the workmen's compensation carrier.

From the depositions and the interrogatories in the instant case, it appears that plaintiff's allegation of bad faith by Reserve in failing to settle the previous personal injury action rests in part upon the contention that Reserve disabled plaintiff's personal injury counsel from settling the case within policy limits by furnishing conflicting and irreconcilable statements concerning the amount of insurance coverage which confused plaintiff's counsel.

On February 23, 1968, Reserve served first interrogatories to plaintiff.[3] Plaintiff answered said interrogatories on October 8, 1969.[4] Only interrogatory No. 27 need be considered in connection with this petition. That interrogatory and the answer thereto is set forth as follows:

"27. Was the plaintiff covered by workmen's compensation at the time of said accident of February 20, 1961? If so, state the following: (a) the name, address, and telephone number of the workmen's compensation insurance carrier involved."

*Answer:* "Transport Indemnity Company, Los Angeles, California."

"(b) The names of all employees or other agents of said carrier with whom you or your attorneys communicated in connection with said suit."

---

[2]In November 1966 the carriers obtained a judgment on the pleadings as to the second cause of action (predicated on negligent failure to settle within policy limits) and the case has proceeded solely upon the first cause of action which is founded upon the bad faith of the carrier in failing to settle within the said policy limits.

[3]A copy of said interrogatories is set forth as Exhibit "B" to the petition.

[4]A copy of said answers to interrogatories is set forth as Exhibit "C" to the petition.

*Answer:* "Harold Q. Longenecker, George Fiore, William Munro, possibly Neville Duvall and others whose names are not presently recalled."

"(c) With respect to each communication with each such employee or other agent of said carrier, set forth:

"*. * * * * * * * * * * *

"(6) The substance of the communication, (or, in the alternative, if it was written, a copy thereof may be attached to your answers to these interrogatories)."

"*. * * * * * * * * * *"

*Answer:* "Decline to answer on the ground that any communications of the type requested in said Interrogatories, if pertaining to the lawsuit, are privileged under the attorney-client privilege and the work product rule. Any communications not related to the lawsuit are irrelevant and are not likely to lead to any discoverable information."

"(g) The effect of the existence of the workmen's compensation coverage and lien on the handling of said suit by your attorneys in connection with:

"(1) Their investigation of said accident of February 20, 1961.

"(2) Their preparation for the trial of said suit.

"(3) Their trial strategy in said suit.

"(4) Their evaluation of the settlement potential of said suit.

"(5) Their handling of the possible settlement of said suit."

*Answer:* "Decline to answer on the grounds that the information is irrelevant and is not likely to lead to any discoverable information and, further, said information is privileged under the attorney-client privilege and the work product privilege."

Thereafter, on November 10, 1969, defendant Reserve filed its notice of motion to compel answers to interrogatories. On December 16, 1969, petitioner filed his opposition papers. The matter was heard in respondent superior court on December 18, 1969, at which time the court ordered that the parties might submit letter briefs dealing with the attorney-client privilege and the work product rule. Both parties filed letter briefs and on January 2, 1970, the court, by minute order, overruled petitioner's objections and ordered petitioner to answer interrogatory 27(b) to (g), inclusive. That minute order reads in pertinent part as follows:

". . . To the extent attorney work product may be involved, denial of discovery will unfairly prejudice defendants in preparing their defense and will result in injustice. To the extent Attorney-Client privilege may be involved, plaintiff has waived such privilege in the initiation and prosecution of this case."

Petitioner's motion for reconsideration was heard on February 10, 1970, and the respondent court denied the motion.

It is petitioner's contention herein that the respondent court exceeded its jurisdiction in requiring petitioner to answer interrogatory 27 in that the communications necessary to be disclosed thereunder are protected under the attorney-client privilege and are the work product of petitioner's attorney; also that petitioner has not waived the right to claim the attorney-client privilege rule nor the work product rule through the institution or prosecution of the present action.

Interrogatory 27(a) and (b) are both preliminary in nature and have been answered by petitioner. Neither of these subdivisions involve either the attorney-client privilege or the work product rule. We need not consider them further. Only 27 (c) (6) is subject to the claim of the attorney-client privilege. Interrogatory 27(g) does not involve a communication of any kind and thus if petitioner's objections to the questions in 27 (g) are to be sustained it must be upon the basis of the work product rule.

The test of bad faith by a liability insurance carrier in connection with its duty to its insured in claims handling and settlement negotiations with third party claimants has been enunciated by the Supreme Court of this state as follows: "In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer:" (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173].)

Neither party made an offer of settlement prior to the conclusion of the trial. Reserve contends that the reason this case was not settled was not because of any disability or confusion of plaintiff's personal injury counsel, but rather because of the large workmen's compensation lien of approximately $65,000 at the time of the trial (in addition to which plaintiff had secured an award of lifetime medical care) which precluded the possibility of settlement within existing policy limits, or except for an amount so high as to make settlement of the case a virtual impossibility.

By its said interrogatory, Reserve has inquired into the parties, mode, date and substance of communications between petitioner's personal injury counsel and the workmen's compensation carrier, which concededly paid

large sums to the petitioner as a result of his injuries. Reserve has also inquired into the effect of the large workmen's compensation lien on counsel's handling of the personal injury action as related to the investigation, trial and settlement strategy. Reserve contends that the information thus sought is "critically relevant" to (1) whether the prior personal injury action was capable of settlement, and (2) whether plaintiff's counsel in that case were, in fact, confused and thereby disabled from settling the case. At page 24 of Reserve's brief in answer to the petition the issue is set forth as follows: "It seems elementary that plaintiff should not be permitted to conduct his present action in an attempt to prove that the decisions, conclusions, and mental state of his attorneys in the personal injury action, as alleged to have been caused by Reserve, prevented a settlement which would otherwise have occurred while, at the same time, denying Reserve the right to inquire into communications which may have a bearing on those very decisions, conclusions, and mental state. To do so would be to permit the plaintiff to litigate and deny defendant the right to defend."

At the outset it should be stated that this court is mindful of the strong admonition against the use of the extraordinary writ as a method to review orders of the trial court, either granting or denying discovery. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161 [84 Cal.Rptr. 718, 465 P.2d 854].) We issued our alternative writ herein on a date prior to the publication of the *Pacific* decision, and for this reason, as well as the fact that the claim of privilege is raised by petitioner, we will proceed to a consideration of the petition on its merits. ■ However, the "heavy burden" imposed upon petitioner by *Pacific* to establish an abuse of discretion by the trial court is clear, and at the outset, to the extent that petitioner's objections are based on relevancy we support the trial court's determination.

Petitioner contends that interrogatory 27 (c) (6) requires the disclosure of a confidential communication of his counsel to the agents of the workmen's compensation carrier within the meaning of section 952 of the Evidence Code, and that a communication is protected by the lawyer-client privilege. (Evid. Code, § 954.) Reserve counters by arguing that that communication called for is not one made by a client to his attorney, but rather by his attorney to third persons and that such communications are not privileged.

As to interrogatory 27 (g) petitioner contends that the information required is protected by the work product rule, section 2016, subdivision (b) of the Code of Civil Procedure. Reserve appears to concede that such information was the work product of the petitioner's personal injury counsel but reasons that it was work product for the personal injury action only

and that now that that action has been concluded it is no longer protectable thereunder, and must be disclosed in the instant action. Reserve states at page 11 of its brief in answer to the petition: "Its [work product rule] application in the present context would be totally without reason since the purpose of the rule, *viz.*, to permit attorneys to investigate fully and to prevent their adversaries from unfairly preparing their cases by exploiting the other attorney's industry or efforts (Cal. Code of Civil Procedure Section 2016 (g)), would not be served and defendants would be severely prejudiced." (See Civ. Code, § 3510.)

If the respondent court's stated reason for its ruling is correct it will be unnecessary to resolve either of the above questions. The court, as noted, ruled that to the extent privilege is involved it was waived by the initiation and prosecution of the case; that to the extent attorney work product is involved, denial of discovery would be unfair to defendant and would result in injustice.

Following the filing of the complaint in this case, depositions of Raoul D. Magana and Daniel C. Cathcart were taken, upon notice, on January 21, 1967. Copies of both depositions have been filed with this court by plaintiff in connection with the petition. Each of the deposed parties were members of the law firm which represented plaintiff in the personal injury action. Cathcart handled all of the matters pertaining to the case prior to the trial; Magana acted as counsel during the trial itself. It is not clear from a reading of the depositions if the plaintiff was present during the time they were taken. We will assume he was not. However, his present counsel was there throughout. In each of said depositions there are contained numerous questions and answers covering the subject of communications by these counsel with representatives of the workmen's compensation carrier and also concerning the effect of the existence of the large lien for compensation benefits paid upon the thought process of each counsel in determining whether or not to undertake settlement negotiations and in the evaluation of the case for potential verdict. No objection was interposed by any counsel to any question based upon either work product or attorney-client privilege. It appears that each question was answered fully and candidly by both deposed parties.

In the case of *Kerns Constr. Co.* v. *Superior Court* (1968) 266 Cal. App.2d 405 [72 Cal.Rptr. 74], the court considered the issue of waiver of privilege on facts similar to those in the instant case. In *Kerns* plaintiff's counsel deposed an employee of cross-complainant, Southern Counties Gas Company. In the course of the deposition the employee was required to use certain reports which had been furnished to him for this purpose by Gas Company's counsel. After the employee had testified freely from the

reports, deposing counsel requested that the reports be identified and appended to the deposition and that copies be made available to him. At this point in the deposition, and for the first time, cross-complainant's counsel objected on the ground of violation of the attorney-client privilege and work product. The trial court ruled the reports were privileged. On appeal, the court reversed the holding of the trial court and held there was a waiver of any privilege that might have existed. (Evid. Code, § 912, subd. (a).)[5] The court reasoned that the waiver was effected by counsel's providing the witness with the reports and permitting him to testify therefrom without objection. Under such circumstances cross-complainant could not now claim privilege or work product to prevent the inspection.

The court in *Kerns* recognized that the privilege rested with the cross-complainant, which did not have a qualified officer present at the deposition. However, at page 413, the court states: ". . . Gas Co. had knowledge that the deposition of its employee, Mr. Reynolds, was to be taken and had the knowledge that Mr. Reynolds had prepared and made the single copy reports. It had the right and opportunity to be present at the taking of that deposition. The record before us contains no evidence that it was coerced into revelation of the reports. The fact the cross-complainant [Gas Co.] was a corporation cannot vary its legal position or status. It could have had present at the deposition a person who could speak for the corporation. The only person present at the deposition and who represented the corporation was Gas Co.'s attorney.

"Under the provisions of Evidence Code, section 955, the attorney who received the communication which is the subject of the attorney-client privilege 'shall claim the privilege whenever he is present when the communication is sought to be disclosed and is authorized to claim the privilege under subdivision (c) of section 954.'

"Thus, by this provision of our statutes, the rule that the one holding the privilege must assert it is changed to require the attorney representing the holder of the privilege to assert it."

We find this reasoning to be applicable to the facts of the instant case.

[5]Evidence Code section 912, provides in pertinent part as follows: "(a) Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege) . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating his consent to the disclosure, including his failure to claim the privilege in any proceeding in which he has the legal standing and opportunity to claim the privilege."

Finally, in holding that there was also a waiver of the work product privilege, the court in *Kerns* at page 411 stated: "If, as claimed, the reports were privileged under the work product rule, the privilege rested with the attorney and was waived by the attorney when he produced the reports to the witness upon which to premise his testimony. The attorney cannot reveal his work product, allow a witness to testify therefrom and then claim work product privilege to prevent the opposing party from viewing the document from which he testified."

The facts in the instant case are stronger in support of a finding of waiver than in *Kerns*. Here the theory of plaintiff's lawsuit placed in issue the conduct and state of mind of his personal injury counsel in failing to propose a settlement. It is to this issue that interrogatory 27 was directed.

Plaintiff argues, however, that there cannot be a waiver of the attorney-client privilege from the mere fact of his initiation of the lawsuit; that such a waiver exists only in the case of a patient-litigant privilege and that even there the waiver has statutory foundation. (Evid. Code, § 996; *City & County of San Francisco* v. *Superior Court* (1951) 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418].) Plaintiff states that by its ruling in this case, respondent court "in effect has legislated a new exception to the attorney-client privilege which neither the California Legislature nor the Supreme Court has seen fit to do." We feel that plaintiff has misconstrued the reasoning and rationale of respondent court. That court neither expressly nor impliedly held that any plaintiff who brings an action against an insurer for bad faith refusal to settle waives the attorney-client privilege with respect to the prior negligence action. Indeed such a sweeping declaration was not necessary to support the court's ruling of January 2, 1970. The court simply found that plaintiff had initiated a lawsuit in which he has placed in issue the decisions, conclusions and mental state of his then attorneys, particularly as to their confusion and disability allegedly caused by defendant's conduct which precluded them from making a settlement offer. ▪ It is obvious both from the issues framed and the contents of the depositions of plaintiff's prior counsel that plaintiff would rely heavily upon evidence to be given by his said counsel and that he would be using his prior counsel to prove matter which they could only have learned in the course of their employment. Thus it was not merely the initiation of the lawsuit but rather the manner of its prosecution which constituted the waiver. The respondent court so held. (McCormick, Evidence (1954) § 97, pp. 197-198; 8 Wigmore on Evidence, McNaughton Revision (1961) § 2324 (1), p. 633 and § 2327 (2), p. 637.) ▪ Inasmuch as the attorney-client privilege does tend to suppress otherwise relevant facts, it is to be strictly construed. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 356 [15 Cal.Rptr. 90, 364 P.2d 266.)

As to plaintiff's objection based on the work product rule, respondent court also held that denial of discovery would be unfair to the defendant and would result in injustice. Code of Civil Procedure section 2016, subdivision (b) states in relevant part: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." ▆ Interrogatory 27 (g) does not request the disclosure of any writing. Thus the trial court acted within its judicial discretion in finding that it would be unfair to deny discovery. Certainly the policy governing the application of the work product rule as set forth in Code of Civil Procedure section 2016, subdivision (g) was in no way violated by permitting the discovery. As stated in 8 Wigmore on Evidence, McNaughton Revision, section 2327, "There is always also the objective consideration that when his [holder of the privilege] conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final." We have already noted that in *Kerns* the attorney is deemed the holder of the privilege. Whether based on waiver or on unfairness or both we find that respondent court's ruling that the privilege cannot continue to exist is correct.

The alternative writ is discharged. The petition for peremptory writ of prohibition and/or mandamus is denied.

Stephens, Acting P. J., and Reppy, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied September 10, 1970.