[Civ. No. 42269. First Dist., Div. Three. May 22, 1978.]

JEAN LOHMAN, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
WILLIAM O. WEISSICH et al., Real Parties in Interest.

**COUNSEL**

McCready & Doyle, James E. McCready and John Doyle for Petitioner.

No appearance for Respondent.

Ericksen, Lynch, MacKenroth, Arbuthnot & Brennan, Lynch & Loof-bourrow, Duane Grummer and James Parton III for Real Parties in Interest.

**OPINION**

**FEINBERG, J.**—This is a petition for writ of mandamus/prohibition to direct the Alameda County Superior Court to vacate an order requiring petitioner's former attorney, John D. Burroughs, to answer specific questions which, on the ground of attorney-client privilege, he declined to answer at a deposition. Petitioner also requests that answers given by

Burroughs at the deposition be suppressed as violative of the attorney-client privilege or work-product rule.

During the period February 6, 1970, through March 7, 1972, petitioner was placed under temporary conservatorship. The temporary conservator was Edward Beverly Lohman; William O. Weissich was the attorney for the temporary conservator and is the real party in interest here.

In 1973, petitioner filed a complaint in respondent court, alleging causes of action for breach of trust, personal injury, and fraud against Lohman. Subsequently, petitioner filed an amended complaint, adding Weissich as a defendant in the action on the theory that Weissich, as attorney and agent of the temporary conservator, was directly responsible for acts and omissions committed during the administration.

### Jurisdiction

Initially, Weissich opposes the granting of the writ on procedural grounds.

When Jean Lohman first petitioned this court she did not provide a sufficient record and, consequently, the petition was summarily denied on September 12, 1977. The next day an identical petition accompanied by a complete record was received by the court. On October 24, 1977, this court, acting on the September 13, 1977, petition, issued a peremptory writ of mandate to the respondent court, directing it to vacate its order requiring Burroughs to answer. Petitioner's further request that the answers given by Burroughs be stricken was denied. Thereafter, real party in interest (Weissich) petitioned the Supreme Court for a hearing. The petition was granted but the Supreme Court transferred the cause to this court for hearing.

Respondent argues that under California Rules of Court, rules 24(a) and 27(a), the Court of Appeal has no authority to grant a rehearing in a writ proceeding. While this is a proper reading of the rules, it has no bearing on this case.

Since denial of the initial petition could be interpreted as being other than a decision on the merits, the doctrine of res judicata is inapplicable. (*McDonough* v. *Garrison* (1945) 68 Cal.App.2d 318, 327 [156 P.2d 983]; see also 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 146, p. 3917.) Hence, while we may not rehear the initial petition, i.e.,

the petition of September 12, 1977, after a final decision was rendered, we may entertain subsequent identical petitions until there is a resolution on the merits.

### Attorney-Client Privilege

At the outset, it is not disputed that the questions put to Burroughs, which Burroughs refused to answer, invaded the attorney-client privilege. Both parties agree that the sole issue is whether the privilege had been waived. In considering whether the attorney-client privilege has been waived, we start with the proposition that, as Justice Shinn, concurring, wrote in *People* v. *Kor* (1954) 129 Cal.App.2d 436, 447 [277 P.2d 94]: "The privilege of confidential communication between client and attorney should be regarded as sacred. It is not to be whittled away by means of specious argument that it has been waived. Least of all should the courts seize upon slight and equivocal circumstances as a technical reason for destroying the privilege."[1] (Quoted with approval in *Sullivan* v. *Superior Court* (1972) 29 Cal.App.3d 64, 71 [105 Cal.Rptr. 241]; *People* v. *Flores* (1977) 71 Cal.App.3d 559, 565 [139 Cal.Rptr. 546].)

Weissich asserts that the privilege had been waived for either or all of the following reasons:[2]

I. Petitioner waived her attorney-client privilege by having issued a subpoena duces tecum to Burroughs and all her other attorneys prior to Burroughs.

Subsequent to the initiation of the instant action, petitioner through her counsel caused a subpoena duces tecum to be issued to Burroughs, a former attorney of hers, and three other attorneys who preceded him in the representation of petitioner in this matter. The subpoena commanded the four attorneys to produce their records regarding their respective representation of petitioner at a deposition though the subpoena indicated on its face that the four attorneys did not have to personally appear. In fact, no records were produced for the reason that either they had been

---

[1] Perhaps the word "sacred" is judicial hyperbole. As distinguished a juridical philosopher as Jeremy Bentham was vigorously opposed to the attorney-client privilege. (Bentham, Rationale of Judicial Evidence (1827) quoted in 8 Wigmore, Evidence (McNaughton rev. ed. 1961) § 2291, pp. 549-551.)

[2] Neither counsel has directed us to any decisional law squarely dealing with the contentions raised by real party in interest (respondent) nor has our own research been more successful.

destroyed as each attorney was discharged and a new attorney retained, or the discharged attorney forwarded his case records to the succeeding attorney.

Weissich contends that by issuing the subpoena, petitioner by her statement or conduct has manifested a consent to disclosure. Since the records sought related to the dispute at hand, the argument goes, such disclosure would have been of a significant part of the communications between petitioner and Burroughs, and between petitioner and the other named attorneys. Because Weissich had a right to be present at the deposition and to any information introduced at the deposition, there would have been a disclosure in the presence of a third party, namely, himself. Therefore, pursuant to Evidence Code section 912, subdivision (a),[3] there was a waiver of the privilege between petitioner and all the named attorneys, including Burroughs.

The argument is plausible; however, we reject it for several reasons:

A. Evidence Code section 912, subdivision (a), specifies that waiver occurs when the holder of the privilege *has* voluntarily *disclosed* a significant portion of the privileged communications or has consented to such disclosure *made* by anyone. Thus waiver occurs only when the holder of the privilege has, in fact, voluntarily disclosed or consented to a disclosure made, in fact, by someone else. Put another way, the *intent* to disclose does not operate as a waiver, waiver comes into play after a disclosure has been made. In the case at bar, concededly there was no disclosure made of anything at the deposition since no attorney had any document to disclose.

B. Assuming for the moment that there is some merit to the proposition that issuance of the subpoena in and of itself triggered the issue of waiver, before waiver occurs there must be a disclosure of a "significant part" of the privileged communication. (Evid. Code, § 912, subd. (a).) Weissich argues that because the subpoena called for records

---

[3]Evidence Code section 912, subdivision (a), provides in relevant part: "(a) Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege), . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating his consent to the disclosure, including his failure to claim the privilege in any proceeding in which he has the legal standing and opportunity to claim the privilege."

relating to the temporary conservatorship, "clearly" the records related to a significant part of the privileged communications. We suggest that it is not clear at all; on the contrary, it is sheer speculation as to what the records might have contained. They might have been neither a "significant part" nor even privileged at all as not being a confidential communication between client and attorney.

C. Finally, accepting Weissich's analysis up to a point, it assumes that because a witness or his records are subpoenaed to a deposition, the witness will testify or the records will be introduced at the deposition, at which point, the testimony or records will be disclosed to a third party and waiver occur. Again, the assumption that the subpoenaed records will be offered at the deposition is a gratuitous one. The party causing the subpoena to be issued may change his mind at the deposition and not offer the documents. In such event, there will not have been any disclosure to a third party. If Weissich is correct, then, if a client subpoenas a former attorney as a witness at trial and then decides not to call him, the client will have waived the privilege by simply having subpoenaed the attorney. This is surely not the law.

 II. Petitioner waived the privilege vis-a-vis Burroughs by herself testifying as to privileged communications with certain of her prior attorneys regarding the subject matter of the litigation and by permitting one of her attorneys prior to Burroughs to be so examined.

In essence, the argument for waiver is twofold:

A. The first argument is that the privilege protects the *content* of a communication between attorney and client and once a significant part of that content has been voluntarily disclosed, then that content can no longer be protected against disclosure. The proposition is misleading; it mistakes the means for the end.

The end is that, as a matter of public policy, the Legislature declared that certain *relationships* are of such nature that they must be sedulously fostered. The means for achieving that end was the creation of a privilege against disclosure of the contents of such confidential communications as passed between the parties to the relationship during its course even as against the manifest imperative of fair adjudication by disclosure of all relevant evidence. (See *City & County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418]; *People* v. *Canfield* (1974) 12 Cal.3d 699, 705 [117 Cal.Rptr. 81, 527 P.2d 633]; *Glade* v. *Superior*

*Court* (1978) 76 Cal.App.3d 738, 743 [143 Cal.Rptr. 119]; McCormick on Evidence (2d ed. 1975) § 72, p. 152.)

Therefore, it is *not* the content of the communication but the relationship that must be preserved and enhanced as a societal value. Thus, if the client discloses certain facts to a third person and subsequently advises his attorney of those same facts in the form of a confidential communication, there has been no waiver since, obviously, the client had not disclosed to the third person the confidential communication to the attorney, i.e., *had not disclosed that certain information had been communicated to the attorney.* It follows then that, assuming petitioner waived her privilege as to all confidential communications with her attorneys prior to Burroughs, she did not waive her privilege as to her communications with Burroughs during his representation of her even though what she told Burroughs related to the same subject matter or was identical to what she told her prior attorneys. (See McCormick, *op. cit. supra,* § 93, p. 194.)

B. The second argument, in effect, is that the relationship of attorney-client is between the *class* of attorneys and the client. Thus, if the client discloses or permits the attorney to disclose a significant part of the privileged communication, then the privilege is waived by the client as to all attorneys who may succeed to the representation of that client with regard to the same substantive matter. If Weissich is correct then consider the following situation: Client goes to attorney X seeking legal representation. Client tells X of the problem. X advises client that client has no cause of action and will not represent client. The privilege has attached. (Evid. Code, §§ 951, 952.) Now, client tells a friend about his conversation with X. Client then goes to attorney Y with regard to the same problem. Y concludes that client has a cause of action and undertakes representation. Concededly, client's privilege as to the communication between client and attorney X has been waived by the disclosure of that communication, but surely that does not mean that client's communication to attorney Y is outside the privilege. As petitioner has pointed out, if Weissich is correct, then petitioner's present counsel can be deposed or compelled to testify at trial as to what petitioner has told him. In short, the privilege protects the client from disclosure of the confidential communication between the client and the *particular* attorney; waiver as to a confidential communication between client and an attorney does not operate as a waiver as to confidential communications with subsequent attorneys who succeed to the representation of the client in the action.

III. The third argument Weissich urges in support of waiver is that the nature of the action and Weissich's affirmative defenses thereto, as a matter of fairness, requires waiver.

Weissich was named as a party defendant in the underlying action by amendment to the complaint pursuant to the provisions of Code of Civil Procedure section 474. He has affirmatively pleaded the statute of limitations as a defense on the ground that at all times petitioner here was aware of Weissich's role in the matter and thus, as to him, the cause was barred by the statute of limitations when the complaint was amended to name him as a defendant. On the other hand, if the amendment of the complaint relates back, then the defense of the statute of limitations will not lie. Therefore, Weissich should be able to discover petitioner's knowledge. In support of his contention, Weissich cites *Merritt* v. *Superior Court* (1970) 9 Cal.App.3d 721 [88 Cal.Rptr. 337].

We do not quarrel with Weissich's assertion that he should be permitted to discover when petitioner became aware of Weissich's alleged involvement. But that is not the point here. What is at issue here is not what petitioner knew but what she told her attorney Burroughs. What petitioner knew may not be privileged; what petitioner told her attorney is. Nor is the holding in *Merritt* applicable here. In *Merritt,* the plaintiff put "in issue the decisions, conclusions and mental state of his then attorneys." (*Merritt* v. *Superior Court, supra,* at p. 730.) Consequently, the court held, whether on a theory of waiver or fairness, the defendant could also compel discovery from that attorney. Here, petitioner did not put her former attorney Burroughs' state of mind or knowledge in issue. In fact, as Weissich candidly states, it is petitioner's knowledge of the facts that he wishes to prove by deposing Burroughs.

We conclude that neither for any of the reasons advanced by real party in interest nor for all of them has the attorney-client privilege between petitioner and Burroughs been waived.

IV. There remains the question as to whether the answers Burroughs did give at the deposition, over petitioner's objection, should be suppressed.

We point out that petitioner did not move the trial court to suppress or strike the answers Burroughs did give. Thus we are asked to direct the trial court to perform an act which, on the record, it has never refused to perform. Ordinarily, mandate would not lie in such a situation. (5 Witkin,

Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 110, p. 3886.) However, in light of the trial court's ruling on Weissich's motion to compel answers, it is a reasonable inference that a motion to suppress by petitioner would have been futile. (See 5 Witkin, *op. cit. supra*, § 113, p. 3888.)

Accordingly, we have decided to address the issue for the guidance of the trial court in the event the case goes to trial.

The answers given fall into four general categories:

(a) Burrough's opinions regarding the culpability of Weissich and Lohman, the temporary conservator, including whether either committed fraud or misrepresentation;

(b) Burrough's interpretation of Probate Code section 2103 regarding finality of a conservatorship termination order formed in connection with his representation of petitioner;

(c) Communications between a former husband of petitioner and Burroughs and between petitioner's stepson and Burroughs; and

(d) Conversations with county clerk personnel in the course of Burrough's investigation into the temporary conservatorship.

1. In 1967, Evidence Code section 952 was amended to include within the definition of a confidential communication "a legal opinion formed and the advice given by the lawyer in the course of that relationship." The comment of the Law Revision Commission to the 1967 amendment makes clear the scope of the amendment. "The express inclusion of 'a legal opinion' in the last clause will preclude a possible construction of this section that would leave the attorney's uncommunicated legal opinion—which includes his impressions and conclusions—unprotected by the privilege. Such a construction would virtually destroy the privilege."

While Burroughs answered the questions in categories (a) and (b) in the good faith belief that he was not violating the attorney-client privilege, the answers to these questions disclose legal opinions formed by him during his representation of petitioner and should be suppressed. (See *People* v. *Vargas* (1975) 53 Cal.App.3d 516, 527 [126 Cal.Rptr. 88].)

2. In the course of Burrough's representation of petitioner, he interviewed petitioner's former husband and her stepson. In addition, Burroughs consulted with court clerk personnel regarding what had occurred in the prior court proceedings relating to the temporary conservatorship.

None of these conversations or communications would appear to fall within the attorney-client privilege for they were not communications between attorney and client or authorized representative of the client. (Evid. Code, § 951.) However, the questions and answers may fall within the "work product rule."

Code of Civil Procedure section 2016, subdivision (b), provides in relevant part: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's . . . theories shall not be discoverable under any circumstances."

In the leading case discussing the work product doctrine, the United States Supreme Court observed that "Under ordinary conditions, forcing an attorney to repeat . . . all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice . . . [serves to force] the attorney to testify as to what he remembers . . . regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer." (*Hickman* v. *Taylor* (1947) 329 U.S. 495, 512-513 [91 L.Ed. 451, 463, 67 S.Ct. 385].)

These observations are particularly appropriate here where that which was asked of and answered by Burroughs was addressed to what others had told him.

However, we need not decide whether the information obtained comes within the scope of the work product privilege. ■ Code of Civil Procedure section 2016, subdivision (g),[4] makes explicit that the work-

---

[4]Code of Civil Procedure section 2016, subdivision (g), provides: "(g) It is the policy of this state (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate

product privilege enacted in Code of Civil Procedure section 2016, subdivision (b), unlike the attorney-client privilege, was created for the purpose of protecting the attorney. It is the attorney, therefore, who holds the privilege and he can claim or waive it. (*American Mut. Liab. Ins. Co. v. Superior Court* (1974) 38 Cal.App.3d 579 [113 Cal.Rptr. 561]; *Kerns Constr. Co.* v. *Superior Court* (1968) 266 Cal.App.2d 405 [72 Cal.Rptr. 74].) *Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7 [66 Cal.Rptr. 280] appears to have come to a contrary result in that the court holds that the work-product privilege was intended for the benefit of, and may be asserted by, the client as well as the attorney. In that case, discovery was sought of information developed by the client's former attorney and communicated by him to the client. The adverse party then sought to elicit this information from the client by interrogatories. In the meantime, the attorney had been succeeded by new counsel. The client objected to answering the interrogatories. The court, on appeal, held that the answers sought were protected by the work product rule and permitted the client to assert it.

We do not agree with the reasoning in *Mack*. Starting with *Hickman* v. *Taylor, supra,* 329 U.S. 495, and ending with Code of Civil Procedure section 2016, subdivision (g), it appears that the whole thrust of the work product privilege was to provide a qualified[5] privilege for the attorney preparing a case for trial and protecting the fruits of his labor from discovery. Certainly, if the Legislature had intended to afford the client some measure of privilege over and beyond that encompassed in the attorney-client privilege, it would have been relatively simple to so state in Code of Civil Procedure section 2016, subdivision (g).

*Mack* is perhaps distinguishable on the basis that in *Mack* the interrogatories were addressed to the client, not to the former attorney. Thus, there was no opportunity for the former attorney to assert the work product privilege. (See *Petterson* v. *Superior Court* (1974) 39 Cal.App.3d 267, 273 [114 Cal.Rptr. 20].) In the case at bench, it was the former attorney Burroughs being deposed who elected to waive the privilege by answering. Finally, in passing, we observe that the decision in *Mack* may well have been correct in that the questions asked of the client were designed to bring out matters communicated by counsel to client in the course of the attorney-client relationship and protected by the attorney-client privilege.

---

not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."

[5]Absolute as to certain writings, see Code of Civil Procedure section 2016, subdivision (b).

We are of the view, therefore, as to categories (c) and (d), that the answers given should not be suppressed.

Heretofore, real party in interest Weissich moved to augment the record by adding thereto the declaration of James E. McCready, dated March 4, 1975. This court deferred ruling upon the motion but ordered the declaration lodged. The motion to augment is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order compelling Burroughs to answer and the case is remanded for such further proceedings as may be necessary, not inconsistent with the views expressed herein.

Scott, Acting P. J., and Terry, J.,* concurred.

A petition for a rehearing was denied June 21, 1978, and the petition of real party in interest Weissich and the application of petitioner Lohman for a hearing by the Supreme Court were denied July 19, 1978.

---

*Assigned by the Chairperson of the Judicial Council.