[Civ. No. 59904. Second Dist., Div. One. Jan. 28, 1981.]

SCHLUMBERGER LIMITED, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
KINDEL & ANDERSON, Real Party in Interest.

**COUNSEL**

Gibson, Dunn & Crutcher, Theodore B. Olson, Fred F. Gregory and Rex S. Heinke for Petitioner.

No appearance for Respondent.

Beardsley, Hufstedler & Kemble, Seth M. Hufstedler, Dennis M. Perluss and Evelyn Balderman Hutt for Real Party in Interest.

**OPINION**

**RYBURN, J.*—**

### Procedure

Schlumberger Limited, petitioner, petitioned this court for an alternative and peremptory writ of mandate or, in the alternative, an alternative and peremptory writ of prohibition, directing the superior court, respondent, to vacate its order directing petitioner to produce documents and communications which petitioner contends are privi-

---

*Assigned by the Chairperson of the Judicial Council.

leged as either attorney-client communications or attorney work product. The petition was denied by this court. A petition for hearing was filed in the Supreme Court, and granted. The matter was retransferred to this court with directions to issue an alternative writ of mandate and/or prohibition. An alternative writ of mandate was issued.

### Alleged Facts

In its complaint for legal malpractice, petitioner alleges that in December 1972, Union Bank (Union) loaned money to Virtue Bros. Mfg. Co., Inc. (VBM), a wholly owned subsidiary of petitioner. Petitioner directed Union to obtain security interests and to hold them in its name for the benefit of petitioner. Union made the loan on the condition that petitioner guarantee the debt, and agreed to assign the security interests to petitioner in the event of default by VBM. Throughout the transaction, and until October 1975, petitioner was represented by Kindel & Anderson (K & A). VBM was acquired by another entity and in late 1974, defaulted on the obligations guaranteed by petitioner. In early 1975, Union demanded payment from petitioner under the guaranty, and in March 1975, was paid in full by petitioner. Union assigned the security interests to petitioner, and petitioner attempted to enforce its rights. VBM filed a petition for reorganization in bankruptcy, and general creditors took the position that the security interests were invalid and unperfected. Prior to September 1975, petitioner retained Shutan & Trost (S & T) in connection with the VBM bankruptcy matter. In October 1975, petitioner discharged K & A and engaged Gibson, Dunn & Crutcher (G, D & C) to participate with S & T as attorneys of record in the VBM bankruptcy matter. K & A performed no services for petitioner after October 1975.

In May 1976, petitioner entered into a tentative agreement to settle the VBM bankruptcy litigation for an amount which petitioner alleges reimbursed petitioner for substantially less than it would have received had there been no defects in the security interests, and petitioner further alleges that it sustained expense in the VBM litigation. The bankruptcy court approved the settlement in April 1977. Petitioner claims its losses are due to the negligence of K & A, Union and others. In its answer, K & A asserts that petitioner's alleged injuries were caused by its contributory negligence, and that petitioner failed to minimize damages by entering into an unreasonably low and inadequate settlement.

Union and K & A separately filed cross-complaints against G, D & C and S & T, alleging that the negligence of G, D & C and S & T was a cause of the loss of which petitioner now complains, and that if Union and K & A are legally responsible for that loss, they are entitled to at least partial indemnity on a comparative fault basis. In *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326], the court ordered demurrers to the cross-complaints sustained without leave to amend, and held that a lawyer sued for malpractice may not seek partial indemnity from another lawyer who is representing the client in the malpractice action.

In the course of discovery K & A sought production of correspondence and memoranda between petitioner and its in-house or outside counsel, including G, D & C, and S & T for the period July 1971, to December 31, 1975.[1] Petitioner's refusal to produce resulted in an order of respondent on December 13, 1978, compelling petitioner to produce the documents requested except those prepared in the course of advising petitioner concerning the institution or prosecution of the present action. The court ruled that any communications relating to injuries or losses allegedly suffered by petitioner, including communications concerning the prosecution or settlement of the claims in the VBM bankruptcy proceeding were not privileged and were discoverable, and if the communication served a dual purpose it was not privileged and was discoverable. Petitioner produced all except four of the documents covered by the order.

K & A's second request for production listed the same communications and memoranda, but for the period from January 1, 1976 to December 31, 1978. Petitioner's refusal to produce on the ground of privilege resulted in respondent's order of July 11, 1980, from which, by this petition, petitioner seeks relief.[2]

---

[1]The request was limited to the following: "a. Union Bank's loans to VBM; [¶] (b). Schlumberger's disposition of its interest in VBM; [¶] (c). the VBM security documentation; [¶] d. Virtue Industries' warranty claims; [¶] e. Schlumberger's payment on its guarantee; or [¶] (f). the VBM bankruptcy proceeding."

[2]The pertinent portions of the order are: "1. The motion of Kindel & Anderson to compel Schlumberger to produce documents described in 'Defendant Kindel & Anderson's Second Request to Plaintiff Schlumberger Limited for Production of Documents and Things for Inspection, Copying, or Photographing' is granted insofar as the documents therein described relate to the injury, loss, or damage allegedly suffered by Schlumberger, including communications between Schlumberger and its in-house or outside counsel concerning the prosecution or settlement by Schlumberger of the claims in the VBM bankruptcy proceeding, and were not prepared solely in the course of ad-

*Issues*

In an action by a client against a former attorney for malpractice, are communications between the client and the attorney representing the client in the malpractice action protected by the attorney-client privilege?

Is the work product of an attorney representing the client in the malpractice case discoverable?

*Discussion*

I

■ A prerogative writ is available in discovery cases where an order of the trial court granting discovery purportedly violates a privilege. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330 [107 Cal.Rtpr. 309, 508 P.2d 309].)

■ K & A contends that because petitioner did not seek review of the prior court order and substantially complied with that order by producing the communications and memoranda for an earlier period it cannot now seek relief from the subsequent order requiring production for the later period. Disclosure pursuant to a court order is coerced and

---

vising or counseling Schlumberger concerning the institution or prosecution of this lawsuit. Such documents are not privileged within the attorney-client privilege or the attorney-work-product privilege and are relevant to the subject matter of this lawsuit. To the extent that any communication served a dual purpose of advising Schlumberger both with respect to matters that are not privileged under this order and with respect to the commencement or prosecution of the present lawsuit, said communication is not privileged and must be produced. [¶] 2. All communications related to the injury, loss, or damage allegedly suffered by Schlumberger, including communications between Schlumberger and its in-house or outside counsel concerning the prosecution or settlement by Schlumberger of the claims in the VBM bankruptcy proceeding, are not privileged within the attorney-client privilege or the attorney-work-product privilege and are relevant to the subject matter of this lawsuit, except those communications made solely in the course of advising or counseling Schlumberger concerning the institution or prosecution of the present lawsuit against Kindel & Anderson, Union Bank, and Leonard Goldman. To the extent that any communication served a dual purpose of advising Schlumberger both with respect to matters that are not privileged under this order and with respect to the commencement or prosecution of the present lawsuit, said communication is not privileged and must be produced. [¶] 3. With respect to the Court's prior order of December 15, 1978, the four documents described in the moving papers are ordered produced."

does not constitute a waiver. (Evid. Code, § 919, subd. (b).)[3] In addition, the documents produced pursuant to the first order were not for the same period as those subsequently ordered, and such production did not constitute a waiver of the right to object to the subsequent order. The petition for a writ was timely and the production under the first order did not constitute a waiver.

## II

The attorney-client privilege is founded on public policy. As stated in *City and County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418]: "The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence. Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney."

■ Evidence code section 958[4] was not intended to abrogate the privilege as to communication between the client and the lawyer representing the client when suit is filed against a former lawyer for malpractice. The exception is limited to communications between the client and the attorney charged with malpractice. The rule was stated in *Miller* v. *Superior Court* (1980) 111 Cal.App.3d 390, 392-393 [168 Cal.Rptr. 589]: "Clearly, in an attorney breach case this exception applies only where the alleged breach is by the attorney from whom the information is sought. Where, as here, the client has not alleged a breach by the attorney involved in the communication in question, the privilege for that communication remains intact." Cases previously decided under Evidence Code section 958 have been limited to communications between the client and the attorney charged with the malpractice. (E.g., *Carlson, Collins, Gordon & Bold* v. *Banducci* (1967) 257 Cal.App.2d 212 [64 Cal.Rptr. 915]; Lohman v. *Superior Court* (1978) 81 Cal.App.3d 90 [146 Cal.Rptr. 171].) There is no support for the theory proposed by K & A that Evidence Code section 958

[3]Evidence Code section 919, subdivision (b), provides: "If a person authorized to claim the privilege claimed it, whether in the same or a prior proceeding, but nevertheless disclosure erroneously was required by the presiding officer to be made, neither the failure to refuse to disclose nor the failure to seek review of the order of the presiding officer requiring disclosure indicates consent to the disclosure or constitutes a waiver and, under these circumstances, the disclosure is one made under coercion."

[4]Evidence Code section 958 provides: "There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship.'

permits discovery of communications between the client and the attorney representing the client in a malpractice action against a former attorney.

■ There is no client-litigant exception to the attorney-client privilege. (*People* v. *Lines* (1975) 13 Cal.3d 500 [119 Cal.Rptr. 225, 531 P.2d 793].) Privileged communications do not become discoverable because they are related to issues raised in the litigation. *Merritt* v. *Superior Court* (1970) 9 Cal.App.3d 721 [88 Cal.Rptr. 337], relied on by K & A, is limited in its application and applies only where the decisions, conclusions and mental state of the attorneys are placed in issue, and where such counsel will be used to prove matters which they could have learned only in the course of their employment. "Thus it was not merely the initiation of the lawsuit but rather the manner of its prosecution which constituted the waiver...." (*Merritt, supra,* 9 Cal. App.3d 721, 730.) If tendering the issue of damages in a malpractice action waived the privilege, there would be no privilege, and Evidence Code section 954 would be meaningless.

### III

■ Code of Civil Procedure section 2016, subdivision (b), establishes a qualified privilege against discovery of general work product of an attorney, and an absolute privilege against discovery of writings reflecting an attorney's impressions, conclusions, opinions or legal research, or theories. Affirmatively tendering an issue in litigation, such as the issue of damages, does not waive the privilege even though the evidence might be relevant on that issue. The court in *Popelka, Allard, McCowan & Jones* v. *Superior Court* (1980) 107 Cal.App.3d 496, 501 [165 Cal.Rptr. 748], properly summarized the reasoning behind the privilege as follows: "If filing a malicious prosecution action (or, by the same logic, a malpractice action) could automatically open an attorney's files to a prior action, then an attorney, anticipating such a future suit, would hesitate to commit his or her doubts about a case to paper. [¶] Preventing such hesitation on an attorney's part is one of the principal purposes of the privilege, which is designed '...(i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necesssary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases ...' (Code Civ. Proc., § 2016, subd. (g).) This purpose is elaborated in *Hickman* v. *Taylor* (1947) 329 U.S. 495, 511 [91 L.Ed. 451, 462, 67 S.Ct. 385], which was influential in framing the federal and

California work product privileges. 'Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... Were... [the lawyer's work product] open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.' (*Id.*, at p. 511 [91 L.Ed at p. 462].)"

## Conclusions

Communications between a client and an attorney representing the client in a malpractice action against a former attorney are privileged and not subject to discovery, and the privilege is not waived by tendering an issue on which the requested information may be relevant.

■ The general work product of an attorney representing a client in a malpractice action against a former attorney is not discoverable unless it can be shown that the denial of discovery of the general work product would unfairly prejudice the party seeking discovery or will result in injustice. No such prejudice or injustice has been demonstrated by raising the issue of damages herein. The writings reflecting an attorney's impressions, conclusions, opinions, or legal research or theories are absolutely privileged.

All of the communications and memoranda ordered produced by respondent are privileged and protected from disclosure.

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting the motion to compel production of documents and to enter a new order denying the motion.

Spencer, P. J., and Hanson (Thaxton), J., concurred.