Michael E. TENNENBAUM; Barry A. Porter; Marylyn Hoenemeyer; Robert C. Becker, Jr., et al., Plaintiffs–Appellees,

v.

DELOITTE & TOUCHE, Defendant–Appellee,

and

Thomas P. WILLIAMS, Chapter 7 Trustee, Appellant.

Nos. 94–56242, 94–56292.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1996.

Decided Feb. 29, 1996.

Jeanne E. Irving, Hennigan, Mercer & Bennett, Los Angeles, California, for appellant.

Jeffery D. McFarland, Milbank, Tweed, Hadley & McCloy, Los Angeles, California, for plaintiffs-appellees Michael E. Tennenbaum, et al.

Cheryl D. Justice and Leanne J. Fisher, Gibson, Dunn & Crutcher, Los Angeles, California, for defendant-appellee Deloitte & Touche.

Before: POOLE, WIGGINS, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

We must decide whether a promise by a holder of the attorney-client privilege to waive the privilege, contained in a written

settlement agreement in one lawsuit, waives the holder's right to claim that privilege in a separate lawsuit, in the absence of the holder's disclosure of a privileged communication.

■ Thomas P. Williams, the Chapter 7 Bankruptcy Trustee for several related Glen Ivy corporate entities, appeals the district court's order requiring Glen Ivy's former lawyer, Maurice Hart, to answer plaintiff Michael E. Tennenbaum's deposition questions that ask him to reveal privileged communications.[1] The district court concluded that Williams waived his right to claim the privilege as to these questions by agreeing, in settlement of a related state court action, that he "will waive the attorney-client privilege as to pre-petition communications with all counsel."

■ We hold that Williams's mere agreement to waive the privilege in the *Kester* action, unaccompanied by a disclosure of privileged documents, did not constitute a waiver of his right to claim that privilege subsequently. As we have jurisdiction over Williams's appeal of the district court's order pursuant to the Interlocutory Appeals Act, 28 U.S.C. § 1292(b), *see Transamerica Computer Co. v. IBM*, 573 F.2d 646, 647–48 (9th Cir.1978), we reverse.

### I

Before filing bankruptcy, Glen Ivy, through its authorized representatives, had numerous confidential communications with its lawyers, both orally and in writing, regarding various legal matters. There is no dispute that these communications, when made, satisfied each element of the attorney-client privilege and, therefore, that the holder of the privilege at that time—Glen Ivy—could have claimed the privilege to prevent their disclosure outside the lawyer-client relationship.

Shortly thereafter, the bankruptcy court appointed Thomas P. Williams as Trustee for Glen Ivy. About one year later, a class of all owners of fractional timeshare interests in Glen Ivy-owned or-operated resorts brought a state court action against Glen Ivy's major banking creditors (the *"Kester"* action) alleging a massive conspiracy to oversell timeshares. Within months, the plaintiffs, the banking defendants, and Williams as Trustee agreed to settle. Paragraph 8 of the settlement agreement, entitled *"Cooperation/Waiver of Attorney Client Privilege,"* provides in pertinent part that "... the Trustee will waive the attorney-client privilege as to pre-petition communications with all counsel...." The parties agree, and the district court noted, that Williams hasn't disclosed any privileged communications pursuant to paragraph 8, nor have the plaintiffs in *Kester* had physical access to the communications or even requested that Williams make a disclosure or grant access.

■ A few months before *Kester* was filed, a group of sophisticated private investors, investment bankers, and venture capitalists who had purchased subordinated notes and shares of stock in Glen Ivy—led by one of Glen Ivy's former directors, Michael E. Tennenbaum—sued Deloitte and three former officers of Glen Ivy. During discovery in this action, the district court, over Williams's attorney-client privilege objection, ordered Glen Ivy's former counsel to answer Tennenbaum's deposition questions calling for disclosure of certain privileged communications. The district court reasoned that Williams waived his right to claim the privilege when he signed the written settlement agreement in *Kester* that contained the promise of waiver. The district court certified its order pursuant to 28 U.S.C § 1292(b), and we agreed to hear Williams's interlocutory appeal.[2]

---

1. Williams also appealed the district court's order requiring Tennenbaum to produce numerous privileged documents to Deloitte & Touche. The parties agree, however, that the appeal of that order is moot, because Tennenbaum has now dismissed his claims against Deloitte in the district court. We therefore vacate that order. *See In re Davenport*, 40 F.3d 298, 299 (9th Cir.1994).

2. Williams also filed a separate notice of appeal of the same district court order, which Deloitte moved to dismiss for lack of jurisdiction under 28 U.S.C. § 1291. A panel of this court referred the motion to us, and we now grant it because that appeal raises the same issue as Williams's appeal under section 1292(b) and is moot.

## II

■ Whether a holder has waived the right to claim the attorney-client privilege is a mixed question of law and fact which we review *de novo. The Home Indem. Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1326 (9th Cir.1995). We do not review merely for "clear error," as Tennenbaum suggests that we should, unless, unlike here, the parties agree on the scope of the privilege but disagree about the material facts. *See, e.g., United States v. Zolin,* 809 F.2d 1411, 1417 (9th Cir.1987).

## III

Tennenbaum does not dispute that his deposition questions ask Hart to reveal communications that fall squarely within the scope of the attorney-client privilege. Nor does Tennenbaum contend that Williams isn't the holder of the privilege as to those communications or that Williams failed to claim the privilege in this case in a timely and procedurally proper manner. Rather, both parties agree that the principal issue before us is whether Williams waived his right to claim the privilege when he signed the settlement agreement in *Kester,* solely because in paragraph 8 of that agreement he promises to waive the privilege.

Williams maintains that his promise to waive the privilege, even though embodied in a written settlement agreement, did not waive his right to claim the privilege in response to Tennenbaum's inquiries because he never *disclosed* any privileged communications pursuant to his promise. Tennenbaum, on the other hand, argues that Williams lost his right to claim the privilege in any context once he signed the agreement to waive the privilege, without regard to whether Williams ever kept his promise, because the mere act of agreeing to waive the privilege evidenced his desire and intent not to maintain the

confidentiality necessary to keep the privileged communications privileged.

■ Because the lawsuit from which this privilege issue arises is grounded exclusively in the federal securities laws, we look first to the federal common law of privilege. *See Dole v. Milonas,* 889 F.2d 885, 889 n. 6 (9th Cir.1989) (*citing* Fed.R.Evid. 501). We may also look to state privilege law—here, California's—if it is enlightening. *See Lewis v. United States,* 517 F.2d 236, 237 (9th Cir.1975) ("In determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law. But the rule ultimately adopted, whatever its substance, is not state law but federal common law."). And we may seek guidance from the *proposed* Federal Rules of Evidence, which the Supreme Court prescribed and approved but ultimately Congress didn't adopt, because "the proposed rules constitute 'a convenient comprehensive guide to the federal law of privilege as it now stands.'" *Transamerica Computer Co.,* 573 F.2d at 651 (*quoting United States v. Mackey,* 405 F.Supp. 854, 857–58 (E.D.N.Y.1975)).

■ Although there is no authority that squarely addresses this waiver issue, federal caselaw, California Evidence Code section 912(a), and Rule 511 of the proposed Federal Rules of Evidence convince us that Williams's mere promise to waive the privilege, without a disclosure of privileged communications, did not waive his right to claim the privilege.[3]

■ The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are

---

**3.** Because we conclude that there was no waiver, we do not reach Williams's alternative argument that the scope of a waiver should be limited to matters actually disclosed. Moreover, because our holding that there was no waiver is based on our conclusion that a mere promise to waive is not a waiver, we decline to address Williams's

alternative contention that even if a promise to waive were sufficient to constitute a waiver in some instances, *his* promise should not be a waiver because he and the persons to whom he agreed to make a disclosure had and have "common interests."

less favorable. *See* 8 J. Wigmore, *Evidence* § 2327 at 636 (McNaughton rev. 1961). For this reason we have admonished that the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the attorney-client relationship, not the holder's intent to waive the privilege. We held in *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18 (9th Cir.1981), for example, that a holder's disclosure of privileged communications during discovery waives the holder's right to claim the privilege as to communications about the matter actually disclosed, despite the holder's "bare assertion that it did not subjectively intend to waive the privilege" when it made the disclosure. *Id.* at 25; *see also United States v. Mendelsohn*, 896 F.2d 1183, 1188–89 (9th Cir.1990) (a client's disclosure of the purported legal advice received from his lawyer waived his right to claim the privilege to prevent his lawyer from testifying as to the actual advice given, and his "intent or lack of intent to waive the attorney-client privilege is not dispositive"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992) (refusing to extend the scope of a waiver beyond the few privileged documents actually disclosed).

■■■■ It follows from *Weil* and its progeny that a mere intention to waive the privilege, evidenced only by a promise, as in this case, does not waive the privilege. We see no principled basis for disregarding a holder's claimed subjective intent not to waive when there has been a disclosure, as we did in *Weil*, while making an intent to waive dispositive on the issue of waiver in the absence of a disclosure. The triggering event is disclosure, not a promise to disclose. The contrary rule urged by Tennenbaum, where a promise to waive is itself a waiver because it evidences the intent to waive, would extend the doctrine of waiver beyond what is needed to further its purpose, inasmuch as a mere promise, without disclosure, presents none of the same fairness concerns.[4]

■■■ Our view that a promise to waive the privilege is not itself a waiver comports with the text of the privilege sources to which we normally look for guidance. California Evidence Code section 912(a), the seminal waiver statute and the model for Rule 511 of the proposed Federal Rules of Evidence, states that "the right of any person to claim a privilege ... is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, *has disclosed* a significant part of the communication or has consented to such *disclosure made* by anyone." Cal.Evid.Code § 912(a) (emphasis added). Its emphasis on a past act of "disclosure" indicates that a promise to disclose, unaccompanied by an actual disclosure, does not waive the right to claim the privilege.[5] As the court said in *Lohman v. Superior Court (Weissich)*, 81 Cal.App.3d 90, 146 Cal.Rptr. 171 (1978), "waiver occurs [pursuant to section 912(a) ] only when the holder of the privilege has, in fact, voluntarily disclosed or consented to a disclosure made, in fact, by someone else. Put another way, the *intent* to disclose does not operate as a waiver[;] waiver comes into play after a disclosure has been made." *Id.* at 174 (emphasis in original).

---

4. Even in the one situation where we recognize a waiver despite no disclosure of privileged communications—when the privilege holder raises a claim or defense in litigation that puts in issue privileged communications, *see, e.g., Chevron*, 974 F.2d at 1162—we do so only because fairness requires disclosure.

5. Indeed, comments by the California Law Revision Commission about section 912(a) indicate that the Commission explicitly considered and rejected having waiver turn on a promise to waive rather than on a disclosure. As it explained, "the fact that a·person has agreed to waive a particular privilege for a particular purpose—as, for example, an agreement to waive the physician-patient privilege in an application for insurance—does not waive the privilege generally unless disclosure is actually made pursuant to such authorization." *See* California Law Revision Commission, *Tentative Recommendation And A Study Relating To The Uniform Rules Of Evidence Article V. Privileges* (February 1964), *reported in* 6 California Law Revision Commission, *Reports, Recommendation, and Studies* (September 1964), at 262. Likewise, Rule 511 of the proposed Federal Rules of Evidence also "was not intended to encompass contractual waivers of the privilege." *See* 26A Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5728 at 551 (1992).

Neither of the cases relied upon by Tennenbaum compels us to conclude that a promise to waive the privilege is enough to waive it. In *In re Horowitz*, 482 F.2d 72 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973), unlike here, the privilege holder actually gave privileged documents to a third-party, who "conceded that he 'may have thumbed through them' or 'glanced at them', and may have 'seen what they said.'" *Id.* at 80. Our conclusion that Williams's mere promise to waive is not a waiver is consistent with the Second Circuit's holding in *In re Horowitz* that disclosure under those circumstances amounted to a waiver. In *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y. 1993), the holder not only agreed in an earlier litigation to a limited waiver of its right to claim the privilege in connection with its witnesses' depositions, but also allowed those witnesses to testify freely about certain privileged communications. *Id.* at 477–78. As the *Bowne* court explained, consistent with our holding today, a disclosure rather than a promise is the linchpin of the waiver doctrine: "the stated willingness of [the privilege holder] at the depositions not to invoke the privilege did not in itself constitute a waiver[;] [r]ather, the triggering event was the actual disclosure of privileged communications during the course of the depositions...." *Id.* at 483.

We therefore hold that a mere agreement to waive the privilege does not, without disclosure, constitute a waiver of the holder's right to claim it subsequently.

REVERSED IN PART; MOOTED AND VACATED IN PART.