[No. AO20249. First Dist., Div. One. May 31, 1983.]

TRAVELERS INSURANCE COMPANIES et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY
OF SAN FRANCISCO, Respondent;
ELNORA BECKNELL, Real Party in Interest.

**COUNSEL**

Stephen E. Cone, Farella, Braun & Martel, Charles E. Morehouse, Keith Schirmer, Burnhill, Morehouse, Burford, Schofield & Blunden, Samuel F. Barnum and Sedgwick, Detert, Moran & Arnold for Petitioners.

No appearance for Respondent.

David R. Olick and Olick, West & Van Driel for Real Party in Interest.

**OPINION**

**HOLMDAHL, J.**—Petitioners seek a writ of mandamus or, in the alternative, a writ of prohibition directing the San Francisco Superior Court to vacate its order requiring production of certain documents in the possession of Travelers Insurance Company and Phoenix Insurance Company and ordering one John Williams, or any other witness designated by those companies, to answer certain deposition questions.

We agree that the order should be vacated and direct issuance of a peremptory writ of mandate accordingly.

*Statement of Facts*

Travelers and Phoenix (hereafter Travelers) are the malpractice insurance carriers for Attorney Rodney Klein and his associated professional corpora-

tions.[1] All are defendants below in a suit brought by real party, Elnora Becknell and we refer to them collectively as petitioners.

In her complaint, she alleges that Klein negligently failed to bring a medical malpractice action (Becknell v. Jarach) to trial within five years pursuant to Code of Civil Procedure section 583, subdivision (b), thereby breaching his retainer agreement with her. In addition, she alleges that Klein breached his fiduciary duty to her by failing to inform her of the status of the Jarach action when judgment was entered dismissing the case; that he filed an appeal of the dismissal without authorization from her and without disclosing the true facts to her; that he falsely and fraudulently represented to her that the delay in her case was due to its being taken off calendar and that he was attempting to restore it to calendar; and that, in so doing, he acted with fraud and malice to induce her to continue to retain him as her attorney. In reliance upon these representations, Becknell allegedly continued to retain Klein as her attorney in the Jarach action. As a further cause of action, she alleges that Klein transmitted his Jarach file to Travelers without her permission. Finally, she alleges that Klein and Travelers conspired and agreed to accomplish the mentioned acts; that Travelers requested that Klein make Becknell's file available to it without her consent or knowledge; that he did so, although it contained confidential, private, privileged information; and that petitioners acted with fraud and malice in agreeing among themselves that the fact of the examining and copying of the file would be withheld from her, thereby causing her to suffer mental anguish.

Klein's malpractice policy required him to notify Travelers when he became "aware of any act or omission which might reasonably be expected to be the basis of a claim or suit covered by" the policy. He did so; however, he continued to represent Becknell for some 10 months thereafter.

The trial court's order[2] before us requires disclosure of documents in Travelers' claims files generated prior to the time that Klein was substituted out of the Becknell v. Jarach matter.[3]

---

[1]The suit below names various "Klein entities" as defendants: Rodney A. Klein, a professional corporation, Fields, Klein & Smith, a professional corporation, Klein, Garbutt & Simmons, a professional corporation. All were petitioners here and will be collectively referred to along with petitioner Klein as Klein. After oral argument, we were informed Klein and the Klein entities settled with Becknell.

[2]The order was made by a commissioner sitting, by stipulation, as a judge pro tem. of the superior court. He heard and ruled upon a number of motions made by the respective parties.

[3]The trial court's order also requires Travelers' agent, Williams, to answer deposition questions "relating or pertaining to events occurring prior to the time Defendant Rodney A. Klein was substituted out of Becknell v. Jarach . . . ." The same issues of attorney-client privilege and work product are raised with regard to this portion of the order.

For convenience, this opinion will discuss the issues only in the context of the motion to compel production of documents, the resolution of which necessarily resolves the deposition issue. Indeed, the parties brief the case as though it only dealt with the document request.

Klein and Travelers contend that the documents at issue are protected by the attorney-client privilege (Evid. Code, § 952)[4] and by the attorney work product rule (Code Civ. Proc., § 2016, subds. (b) and (g)). Becknell argues that the documents are not so protected.

### Procedural History

In August 1982, Becknell propounded certain interrogatories to Klein. She also served a request for production of documents on Travelers, asking essentially for its entire claims file on the Becknell-Klein matter. To be included were Travelers' interoffice memos and documents relating to Becknell or the Jarach matter, correspondence from or to Klein regarding Becknell or the Jarach action, and notes of conversations with Klein, Travelers' claims supervisor and all other employees concerning the Becknell or the Jarach case. Excluded only were "communications" between Travelers and its attorneys "generated" after it was "served with this litigation."

Klein did not answer the interrogatories, notwithstanding the 30-day requirement of Code of Civil Procedure section 2030. Travelers did not respond to the request for production of documents, notwithstanding the written-response-or-objection requirement of Code of Civil Procedure section 2031.

Becknell served by mail on September 28, 1982, motions to compel. On October 4, 1982, Travelers served Becknell motions for severance and for protective orders, as well as a declaration from counsel asserting attorney-client communication and attorney work product privileges in opposition to the motion to compel. Klein joined in support of Travelers' motions and he and his attorney also asserted the privileges.

On October 13, 1982, the motions were heard and the court denied the severance and protective order motions and the motion to compel. However, petitioners were given until October 21, 1982, to serve Becknell with a formal response to the request for production of documents.

On October 19, 1982, Klein provided responses to the interrogatories directed to him. At his deposition on October 20, 1982, Travelers' agent Williams refused to answer questions pertaining to the files at issue on the grounds of attorney-client and attorney work product privileges.

On October 25, 1982, petitioners produced a catalogue listing and identifying over 1,100 documents. The catalogue included a cover letter explaining the attorney-client and work product objections raised by petitioners. In addition, the catalogue itself noted, briefly, the objections.

---

[4]All statutory references are to the Evidence Code unless otherwise indicated.

On October 29, 1982, Becknell served a further motion to compel, contending she was entitled to the requested documents (and to deposition answers of Williams) and that the asserted privileges did not apply because of sections *958* and *962*.[5]

She further claimed that the work product privilege should not apply because the prejudice to her would be extreme, and noted that some of the objections were that documents were Attorney Sedgwick's work product even though the documents had been generated prior to Sedgwick's retention by Travelers.

On November 19, 1982, the trial court ordered that petitioners "shall produce all documents specified in Plaintiff's Notice of Motion which are designated with a date prior" to Klein's substitution out of the Becknell v. Jarach suit and "all documents specified therein which were generated prior to said date. Documents designated with subsequent dates, or generated subsequent to that date need not be produced." In addition, Williams was ordered to return to his deposition and to "answer all proper questions relating or pertaining to events occurring prior" to Klein's substitution out.

Petitioners then filed their writ petition and their requests for stays of the discovery order and of the trial then set for November 29, 1982. Their requests were denied by this court. The Supreme Court, thereafter, granted those requests and retransferred the cause and petitions to this court with "directions to issue an alternative writ of mandate and to consider the matter, when it is ordered on calendar, in light of Gene Compton's Corp. v. Superior Court (1962) 205 Cal.App.[2d] 365, 375, and Evidence Code sections 952 and 956."

We have reconsidered the matter as directed. We will first consider a number of preliminary matters, and then review the citations by the Supreme Court.

### Procedural Irregularities

We note petitioners' responsibility for various procedural irregularities which have made difficult this court's review of their petition. Most notably, while they seem to be arguing for a general rule that an insurer's "claims file" is always privileged as an attorney-client communication or as an attorney's work product, or both, they failed to provide this court with the catalogue and itemized objections which were before the trial court.[6] As held by the court in *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 156 [143 Cal.Rptr. 450]:

---

[5]Becknell does not, however, assert the section 962 exemption in this petition, and we have not considered it.

[6]In addition, petitioners' entire memorandum of points and authorities, which includes a statement of "substantive facts," (pp. 222-226) is without citation to the record. (Cal. Rules of Court, rule 15.)

" ' "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' ' (Original italics.) [Citations.]"

Under these circumstances, we might quite properly deny the extraordinary writ petitioners seek "because they have not carried their pleading burden" (*Krueger* v. *Superior Court* (1979) 89 Cal.App.3d 934, 939 [152 Cal.Rptr. 870]), despite the Supreme Court order to us.

However, rather than deny the writ on the basis of the inadequate record presented us by petitioner, we consider the petition on its merits. (*Popelka, Allard, McCowan & Jones* v. *Superior Court* (1980) 107 Cal.App.3d 496 [165 Cal.Rptr. 748].) By so doing we respond definitively to the direction of the Supreme Court and review its citations. We are assisted in this effort by Becknell's provision of a copy of the catalogue and itemized objections, which petitioners did not provide.

### Timeliness of Petitioner's Objections

We take note of Becknell's argument that petitioners may not seek relief from the discovery order since their objections below were not timely and since they never formally sought relief from default.

In fact, Travelers did wait almost two months before challenging Becknell's request for production of its "claims file." Its action was taken in response to Becknell's motion to compel. Travelers' response included a declaration explaining the reasons for its delay.

At the first hearing, on October 13, 1982, the trial court ordered counsel to confer regarding the responses and gave Becknell leave to file a second motion to compel should she be dissatisfied with results of the conference. Travelers thereafter delivered the lengthy catalogue of documents in the claims file and produced Williams for his deposition. Thereafter, Becknell filed her second motion to compel, which resulted in the order now before us.

Plainly, petitioners impliedly requested relief from their default by their opposition to the initial motion to compel. And, such relief was granted when the court denied Becknell's motion. Code of Civil Procedure section 2034, subdivision (a), by its terms, vests the trial court with wide discretion to determine whether or not a failure to respond to a request for production of documents was justified. Plainly, from the record here, the lower court deemed petitioners' explanation under oath a justification within the meaning of Code of

Civil Procedure section 2034, subdivision (a), and it then considered the merits of the claims of communication and work product privileges.

*Coy* v. *Superior Court* (1962) 58 Cal.2d 210, 216-217 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678], relied upon by Becknell is of no assistance to her. First, as she notes, the case dealt with failure to respond to interrogatories. Second, the defaulting party never offered an explanation for the failure to answer.

We find no abuse of discretion.

*Waiver of the Privilege*

1. *Klein's answers to Becknell's interrogatories*

■ Becknell argues next that the privilege was waived by Klein's answers to Becknell's interrogatories, as the result of section 912, subdivision (a).[7]

Klein did provide answers to various interrogatories propounded to him by Becknell. As pertinent to the petition before us, these answers included his affirmation he had discussed the Becknell v. Jarach suit with Travelers' representatives, including his having reported the potential malpractice claim as required by his policy and his intention in so doing (i.e., to protect Becknell and himself). He named four such representatives, denied recollection of much else of substance, and refrained from providing addresses, telephone numbers, dates (other than "over a period of years") and any substance of what each individual person said.

Relatively few reported cases interpret section 912, subdivision (a); none is definitive on the question before us. The answer turns, of course, on determination of whether Klein's answers were wide enough in scope and deep enough in substance to constitute "a significant part of the communication." We think not. His answers, at most, were preliminary and foundational—and quite vague. He did not provide the specifics the interrogatories were doubtless intended to produce. Any really "significant part of the communication" required by the statute remained unsupplied.

---

[7]Section 912, subdivision (a) provides, in relevant part: "Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege), . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, *has disclosed a significant part of the communication* or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege." (Italics added.)

Applying the test of Wigmore on Evidence as cited in the only useful precedent we have found, *Jones* v. *Superior Court* (1981) 119 Cal.App.3d 534 [174 Cal.Rptr. 148], we conclude that Klein's conduct in his answers did not reach that " ' "certain point of disclosure, [at which] fairness requires that his privilege shall cease whether he intended that result or not." ' [Citation]." (*Id.*, at p. 547.)

### 2. *Travelers' letters*

Becknell also argues that two letters to Klein from Travelers, disclosed as part of Becknell's file when he turned it over to her new attorney, constitute a waiver of the privilege.

Petitioners tell us that the letters were inadvertently disclosed and that no privilege is claimed as to the letters. There is no evidence in the record supporting this assertion, although there was argument before the trial court to that effect. Determination of waiver results from a factual inquiry, and we note that the lower court made no finding or even implied finding on this question. We do note that these letters are two items among more than 1,100 letters, memos, and other papers listed in Travelers' catalogue. On the record before us, we cannot conclude that the two letters constitute "a significant part of the communication" (as provided by § 912, subd. (a)) or that "fairness requires" that their disclosure, inadvertent or otherwise (in accord with *Jones* v. *Superior Court, supra,* 119 Cal.App.3d 534), result in disclosure of all the other items.[8]

### *Application of Evidence Code Section 958*

Becknell argued below and argues briefly here that the exception provided by section 958[9] applies to permit discovery. While she cites authority describing the high character of the fiduciary relationship between attorney and client, no authority cited is factually similar and none holds an attorney's (or client's) breach has eliminated a privilege.

■ We, therefore, construe the exception of section 958 as being "limited to communications between the client and the attorney charged with the malpractice," as held by *Schlumberger Limited* v. *Superior Court* (1981) 115 Cal.App.3d 386, 392 [171 Cal.Rptr. 413]. While *Schlumberger* involved a former attorney's effort to discover communications between the former

---

[8]Many items in the catalogue are not in dispute as to discoverability; many are.

[9]Section 958 provides: "There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship."

client and its new attorney (and here we have the reverse), we conclude that here as well, the statute applies only to communications between the attorney (Klein) and the client (Becknell). It does not apply, however, to communications between Klein and Travelers or between Travelers and its attorneys.

We proceed now to consideration of the specific citations referred to us by the Supreme Court.

*Application of Evidence Code Section 956*

The Supreme Court direction to this court includes a reference to section 956.[10]

■ Two of Becknell's causes of action allege on information and belief that petitioners conspired together "with fraud[,] malice and oppression," thereby causing her general damages of $50,000 and entitling her to punitive damages of $10 million.

Although she did not argue this exception below, she contends here that section 956 entitles "her to the materials and to have the deponent answer appropriate questions." Her reference, however, is brief and without citation of precedent.

Only a few reported cases interpret this statute. Most of them concern criminal prosecutions of the client party of an attorney-client relationship. None serves as a precedent for the case before us.

We do note, however, *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582, 589 [147 Cal.Rptr. 915], which held in denying a wife access in a dissolution case to privileged materials of her husband that "[s]ince that section is in the form of an exception to the general privilege, the burden is on Mrs. Cooke to establish the existence of such a [fraudulent and criminal] conspiracy. (See the [legislative committee] comment to § 405 of the Evid. Code and *Romo v. Southern Pac. Transportation Co.* (1977) 71 Cal.App.3d 909, 922 [139 Cal. Rptr. 787].)"

The comment cited by *Cooke* specifically includes the section 956 privilege among those concerning which "the burden of proof on the preliminary facts" (legis. committee com., Deering's Ann. Evid. Code, § 405 (1966) p. 413) is on the party claiming the privilege. However, the comment provides this prerequisite to availability of the exception: "The proponent of the proffered evi-

---

[10]Section 956 provides: "Exception: Crime or fraud. There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

dence, however, has the burden of proof upon any preliminary fact necessary to show that an exception to the privilege is applicable. But see Abbott v. Superior Court, 78 Cal App 2d 19, 21, 177 P2d 317, 318 (1947) (suggesting that a prima facie showing by the proponent is sufficient where the issue is whether a communication between attorney and client was made in contemplation of crime)." (*Ibid.*)

No contention has been made in the case before us that any communication "was made in contemplation of crime." And, the trial court made no finding of fraud, nor was there any prima facie showing of fraud. Other than the bare allegations in the complaint of fraud and conspiracy, there is nothing in the record before us to suggest that Becknell offered or provided the trial court with any proof in support of her burden "to show that an exception to the privilege is applicable." While the record does not show that the trial court complied expressly with section 405, subdivision (a) as to designating the burdens of proof between the parties, we concur with the comment: That is, that Becknell did not carry her preliminary burden of proof.

Under these circumstances, we conclude section 956 does not apply and does not, therefore, render the privilege unavailable.

### Application of Evidence Code Section 952

The Supreme Court direction to this court refers us as well to section 952. The statute specifically defines a "confidential communication between client and lawyer."[11]

Petitioners contend that *all* communications between Klein and Travelers from the time when the suit against Jarach was dismissed, are subject to the attorney-client privilege, although Klein purported to continue to represent Becknell in the Jarach matter during the first 10 months of this period. Petitioners filed declarations below, in which they stated that they intended their communications to be confidential. Thus, initially they argue that, having raised the claim of privilege, the burden of proof was on Becknell to show that the communications were not confidential. They cite section 917 in sup-

---

[11]Section 952 provides: "As used in this article, 'confidential communication between client and lawyer' means information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."

port of their position.[12] Petitioners claim that real party did n ot sustain the burden of proof and, therefore, that the order compelling production of documents was in error.

■ Petitioners misread section 917, for their argument impliedly assumes that the section creates a presumption that the communication was made *in the course of an attorney-client relationship* as well as that the communication was confidential. Becknell has not attempted to show that Klein and Travelers intended their communications to be anything other than confidential. But it is *petitioners'* burden to show that there was in existence an attorney-client relationship as to the communication in question. (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700].)

Thus, while section 952 defines "confidential communication" and section 917 provides for a presumption of confidentiality, we must turn to case law to determine if the communications before us are privileged.

### *Application of Gene Compton's Corp. v. Superior Court*

Petitioners rely on *Heffron* v. *Los Angeles Transit Lines* (1959) 170 Cal. App.2d 709 [339 Cal.Rptr. 567, 74 A.L.R.2d 526] and *Gene Compton's Corp.* v. *Superior Court, supra,* 205 Cal.App.2d 365 [23 Cal.Rptr. 250], as requiring that a lawyer-client relationship be found to have existed.

And, the Supreme Court direction requires our review of *Gene Compton's.*

■ Petitioners contend that communications between an insured (Klein) and his insurer (Travelers) are subject to the attorney-client privilege whenever by the terms of a policy the insurer is obliged to retain counsel to defend the insured even though no suit has been filed against the insured and the carrier and even though no attorney is yet on the scene. And, by their reliance on *Heffron* and *Gene Compton's,* petitioners suggest that such communications are confidential communications between client and attorney *as a matter of law*.

The *Heffron* court said: "The prevailing rule has been stated as follows: 'According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be

---

[12]Section 917 provides: "Whenever a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of the lawyer-client, physician-patient, psychotherapist-patient, clergyman-penitent, or husband-wife relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential."

made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.' [Citations.]" (*Heffron* v. *Los Angeles Transit Lines, supra,* 170 Cal.App.2d 709, 718.) In *Heffron,* a bus company was sued for the wrongful death of a child struck by one of the company's buses. The driver had prepared a report on the accident which was transmitted to the insurer. At trial, the plaintiffs sought to inspect the report. The defendants claimed attorney-client privilege, even though the report had been generated before the suit was filed and before the insurance company had retained counsel. The trial court *sustained* the claim of privilege and the ruling was upheld on appeal.

In *Gene Compton's,* this court reversed a lower court order requiring production of an accident report prepared by an insured's employee which was transmitted to the insurance carrier and eventually the attorneys when appointed. The decision relied largely on *Heffron* and *arguably* does hold that insured-insurer communications prelitigation are, as a matter of law, subject to the attorney-client privilege.

Uncertainty results, however, from use of language in portions of the *Gene Compton's* opinion suggesting that the issue is purely a question of law while, in other portions of the opinion, the court suggests that the question is a mixture of law and fact. The materials held to be privileged were statements of employees of the insured who were not themselves named defendants in the lawsuit.[13] The court framed the issue thus: "Are the report of the insured's manager and his statement and that of another employee concerning an accident on the insured's premises prepared for submission and submitted to the insurance carrier for transfer to an attorney to be appointed by the carrier to represent the insured in the event of litigation, privileged?" (*Gene Compton's Corp.* v. *Superior Court, supra,* 205 Cal.App.2d 365, 370.) The court then quoted at length from *Holm* v. *Superior Court* (1954) 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722], and its setting forth of the "dominant purpose" test: " '[T]here would seem to be no privilege in a communication which is not made to or for further communication to an attorney, although the communication might have some connection with possible liability in the future, such as reports submitted in the regular course of business for study in accident prevention. Nor does the privilege attach to a communication not intended to be of a confidential nature. [Citations.] To make the communication privileged the dominant purpose must be for transmittal to an attorney "in the course of professional employment." [Citations.] [¶] In any given situation it is necessary that a determination be made concerning the facts asserted as a basis for the privilege.

---

[13]In addition, the employees were not attorneys sued by a former client, as is the insured in the case before us.

This determination is for the trial court in the first instance. Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney "in the course of professional employment" and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. The question then is whether the conclusion of the trial court on the facts is correct or has resulted in an abuse of discretion.' " (*Gene Compton's Corp.* v. *Superior Court, supra,* 205 Cal.App.2d 365, 373.)

*Gene Compton's* then concluded that the only purpose for the documents at issue was for transmission to an attorney. Thus, the court concluded, "the question before us is one of law on undisputed facts." (*Id.,* at p. 381.) In addition, the court noted that "[u]nder the *Holm* case it is the purpose for which the report is to be used, rather than the particular status of the litigation or the attorneys who are to receive it. [*Sic.*]" (*Id.,* at p. 375.)

Petitioners note in their petition that *Gene Compton's* "has been criticized for its failure to limit the privilege to those communications whose primary purpose is to assist the carrier in the defense of the insured." Becknell goes further and suggests that "*Compton's* time has come and gone"; and it "should go the way of *Plessy v. Ferguson* and other antiquities that have been found to be unsound"; and it "should be overruled."

None of the parties to this proceeding nor the Supreme Court, however, has referred this court to *D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723. *Chadbourne,* in fact, expressly disapproved *Gene Compton's* "[t]o the extent that [it] failed to recognize the respondent court's duty to decide a question of fact . . . ." (*D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, 739, fn. 6.) "But the greatest evil in *Compton's* lies neither in its reasoning nor its result. The broad language used therein . . . , taken together with the fact that it reversed the trial court's order authorizing inspection, suggests the interpretation that all accident reports and statements obtained by the representative of an insurance carrier from the employees of a corporate insured are privileged *as a matter of law*." (*Id.,* at pp. 730-731, original italics.)

Most of *Chadbourne* and its ultimate holding, however, concerned the special "problem involved . . . [relating] to the extent of the attorney-client privilege when the client is a corporation." (*Id.,* at p. 732.) And, *Chadbourne* especially concerned itself with the question of privilege when the communication was from an employee of a corporate employer. Neither element exists in the case before us, and *Chadbourne* otherwise left *Gene Compton's* intact.

## *Lack of Precedent*

In no case cited in this opinion and in no case brought to our attention, was the person claiming privilege an attorney who was being sued by his former client. We have found no such case.

We have, therefore, a case without guiding precedent: One in which the former client Becknell's rights against former Attorney Klein clash with client Klein's rights concerning communications with Travelers and its attorneys. Both sets of rights have strong policy support by statute and case law. Both cannot prevail in the case before us: If we were to uphold the trial court's order, as urged by Becknell, we would destroy *all* of *Gene Compton's* (and related cases) as Becknell also urges. To do so would render discoverable *all* communications here in dispute on the basis Klein was Becknell's attorney or due to the special statutory exceptions to privilege based on their lawyer-client relationship. And, if we were to overrule the trial court and prohibit discovery of all communications after the suit against Jarach was dismissed, as urged by petitioners, we would place beyond discovery *all* communications to which Klein was a party while at the same time he purported to continue to represent Becknell.[14] Some of such communications very likely were of a type deserving of lawyer-client privilege; other communications may well have concerned mostly the suit against Jarach itself or other matters concerning Klein's continued representation of Becknell in the suit. Thus, some of the communications may well be privileged and others may not, depending upon the time of their creation, their purpose, and the confidentiality intent of their creator.

*Chadbourne* did not destroy all of *Gene Compton's* or *Holm*; *Chadbourne* did establish the rule that "the question of privilege, one way or the other, [is not] . . . a matter of law." (*D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, 739.)

Moreover, *Chadbourne* sanctified the "dominant purpose will control" test (*id.,* at p. 737), which is the same test prescribed by *Holm* and *Gene Compton's* for communications to an attorney in the course of professional employment.

*Chadbourne,* also, left intact *Gene Compton's* approval of the holding in *Heffron* that "confidential reports of an accident procured for the use of an insurance company's attorney were protected by the attorney-client privilege." (*Gene Compton's Corp.* v. *Superior Court, supra,* 205 Cal.App.2d 365, 374-375.)

---

[14]Petitioners also rely on *Payless Drug Stores, Inc.* v. *Superior Court* (1976) 54 Cal.App.3d 988 [127 Cal.Rptr. 4]. But *Payless* expressly recognized the criteria set forth in *Chadbourne,* and upheld a trial court's ruling of privilege, noting that the facts below were undisputed. (*Payless Drug Stores, Inc.* v. *Superior Court, supra.*)

Finally, *Chadbourne* left intact *Gene Compton's* approval of the "prevailing rule" that " ""[a]ccording to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him." [Citations.]' " (*Gene Compton's Corp.* v. *Superior Court, supra,* 205 Cal.App.2d 365, 379.)

We conclude, therefore, that:

1. There was no privilege as to any communication previous to March 3, 1977, when the suit against Jarach was dismissed;

2. There was an absolute privilege as to any communication after January 25, 1978, when Becknell discharged Klein;

3. Communications between March 3, 1977, and January 25, 1978, when Klein continued to purport to represent Becknell may, or may not, be privileged depending upon the purpose of each individual communication.

Conclusions 1 and 2, above, correspond to the trial court's determination. Conclusion 3 does not. The trial court held, instead, that for the entire span of some 10 months and because of Klein's continued purported representation of Becknell, *none* of the communications was privileged.

We hold that classification to be arbitrary and unfair. Instead, the *Holm* and *Gene Compton's* (and *Chadbourne*) test of "dominant purpose" should be applied to each communication: " 'This determination is for the trial court in the first instance. Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney "in the course of professional employment" and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. The question then is whether the conclusion of the trial court on the facts is correct or has resulted in an abuse of discretion.' " (*Gene Compton's Corp.* v. *Superior Court, supra,* 205 Cal. App.2d 365, 373.)

Inasmuch as the trial court did not apply this test to any of the communications in the indicated time span nor, apparently, receive evidence necessary to make such a determination, it is not possible for us to review whether any or all such communications are privileged. The initial determination must be by the trial court.

## Work Product Protection

■ Petitioners contend here as they did below, that the documents are protected as an attorney's work product. Their contention is based upon Code of Civil Procedure section 2016, subdivision (b),[15] which has been described as creating in California "a qualified privilege against discovery of a general work product and an absolute privilege against disclosure of documents containing the attorney's 'impressions, conclusions, opinions, or legal theories.'" (*American Mut. Liab. Ins. Co.* v. *Superior Court* (1974) 38 Cal.App.3d 579, 594 [113 Cal.Rptr. 561].)

The trial court's written order does not refer to work product protection at all. Its terms seem to grant Becknell access to Klein's work product even of the type entitled to the absolute privilege provided by Code of Civil Procedure section 2016, subdivision (b), if the document was "designated" between certain dates or was "generated" between certain dates.

We are aware of no precedent allowing even the former client of an attorney access to writings that reflect that attorney's "impressions, conclusions, opinions, or legal research or theories."

Here, also, we believe the trial court's classification to be arbitrary and unfair as it necessarily gives Becknell access to Klein's work product (and that of Travelers' attorneys) dependent only upon the date designated on a given writing or when it was "generated."

As with communications claimed to be privileged, the determination of qualified or absolute privilege of work product should be made on an item-by-item basis within the time span between March 3, 1977, and January 25, 1978.

## Conclusion

Let a peremptory writ of mandate issue commanding respondent court to set aside its order of November 19, 1982, and to review and determine, upon appropriate motion, which of the writings dated or generated between March 3, 1977, and January 25, 1978, are privileged as lawyer-client communications or work product of an attorney and which are discoverable, consistent with the views expressed in this opinion. The trial court's determinations concerning

---

[15]Code of Civil Procedure section 2016, subdivision (b) provides: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances."

these communications and work product will establish the proper scope of interrogation of John Williams and any other witness on these subjects.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied June 30, 1983, and the petition of real party in interest for a hearing by the Supreme Court was denied September 26, 1983. Richardson, J., did not participate therein.