Filed 4/30/13  Proskauer Rose v. Superior Court CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| PROSKAUER ROSE, LLP,<br>  Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br>  Respondent;<br><br>GARY K. MICHELSON et al.,<br>  Real Parties in Interest. | No. B245624<br><br>(Super. Ct. No. BC384760) |

ORIGINAL PROCEEDINGS in mandate.  Mark V. Mooney, Judge.  Petition denied.

Proskauer Rose, Lary Alan Rappaport; Davis Polk & Wardwell and Paul Spagnoletti for Petitioner.

No appearance for Respondent.

Kinsella Weitzman Iser Kump & Aldisert, Dale F. Kinsella, Patricia A. Millett and Jennifer J. McGrath for Real Parties in Interest, Gary K. Michelson and Karlin Holdings Limited Partnership.

_____

Dr. Gary K. Michelson and Karlin Holdings Limited Partnership (collectively Michelson) are the plaintiffs in an action against the law firm of Proskauer Rose (Proskauer), alleging that Proskauer misled Michelson into participating in two tax-shelter investment transactions. Proskauer advised Michelson that it would provide him with opinion letters concerning tax issues associated with the investments, and eventually provided those opinion letters. Michelson invested about $121 million in the two tax shelters and took deductions for the investment on his federal and state tax returns, allegedly in reliance on Proskauer's opinions that the investments "should" survive IRS scrutiny, and that their opinion letters would in any event insulate him from any IRS penalties. However, the IRS disallowed the deductions and assessed substantial penalties.

In this writ proceeding Proskauer seeks relief from respondent court's denial of its motion to compel responses to its request for production of documents containing communications between Michelson and his longtime attorneys, Jeffer Mangels Butler & Mitchell (Jeffer Mangels), about these transactions. We conclude that Proskauer's petition fails to demonstrate any error in the trial court's rulings, and we therefore deny the requested relief.

## BACKGROUND

**Michelson's Action Against Proskauer**

Petitioner Proskauer is the defendant, and Real Party In Interest Michelson is the plaintiff, in an action pending in respondent court entitled *Michelson, et al. v. Proskauer Rose LLP, et al.*, Los Angeles Superior Court case No. BC384760. The operative pleading in that action, the second amended complaint, alleges that in December 2001, Michelson invested in two investment vehicles, known as Strategically Diversified Investment (SDI) and Odora Limited Investment (Odora). Michelson's pleading alleges that he made the investments and claimed losses with respect to them based on formal opinion letters issued to him by Proskauer—purportedly independent attorneys acting on

2

his behalf—attesting to the validity of these investments and their likelihood of withstanding IRS scrutiny.

Michelson's action alleges, however, that Proskauer knew but did not disclose to him that Proskauer was not independent, but had been involved in structuring the SDI and Odora investments; that Proskauer knew but did not disclose that these transactions (or transactions very similar to them) had been identified by the IRS as abusive and illegal tax shelters; and that Proskauer knew but did not disclose that Michelson would be likely to be assessed penalties if the transactions were challenged by the IRS. He alleges that Proskauer's misrepresentations and omissions fraudulently induced him to invest about $121 million in SDI and Odora, and to claim losses from those investments on his tax returns, which he would not have done but for Proskauer's advice and failure to disclose these facts.

The IRS disallowed his claimed losses and assessed substantial penalties, causing him to incur damages alleged to exceed $20 million.

**Proskauer Requests Production Of Documents**

In its first request for production of documents, Proskauer asked Michelson to produce all documents and communications concerning the SDI and Odora transactions and the Proskauer opinions. The requests sought communications including those "prepared, sent, or received" by any advisers, and documents concerning fees for services rendered by any advisers, as well as documents concerning Michelson's tax positions, liabilities and benefits incurred by him, and his communications in other proceedings arising from the transactions.

Michelson refused to provide the documents called for by most of the production requests, based on the attorney-client and work product privileges.[1]

---

[1] Michelson's objections and refusals to produce were based on both the attorney client privilege and the work product doctrine. Proskauer does not address the work product doctrine, either in its motion in the trial court to compel further production, or in its petition in this court.

**Proskauer Moves to Compel Production**

Proskauer moved to compel further responses, filing exhibits to provide factual support.[2] Proskauer's motion relied primarily on the allegations of Michelson's pleading, supplemented by facts in its supporting exhibits. According to Michelson, he was initially contacted about the SDI investment by Ernst & Young, an accounting firm with whom he had previously dealt. Ernst & Young represented to him that Proskauer was an independent and nationally recognized law firm that would provide him with a "should" tax opinion concerning the transaction, i.e., an opinion that the subject transaction, if challenged by the IRS, "should" survive scrutiny.

Proskauer's motion alleged that in November 2001, Jeffer Mangels, Michelson's longtime attorneys, had contacted Proskauer on Michelson's behalf, seeking a tax-opinion letter relating to the SDI and Odora investments. Jeffer Mangels handled all of Michelson's substantive communications with Proskauer concerning the SDI and Odora investments, and oversaw the SDI and Odora transactions on Michelson's behalf. Michelson had no direct contact with any of the attorneys at Proskauer. Without the protection of a "should" opinion letter, Michelson alleged, he would not have invested in SDI or Odora.

According to Proskauer, Jeffer Mangels and Proskauer worked together to prepare opinion letters that were acceptable to Michelson, with Jeffer Mangels making revisions that altered the legal and factual positions of the original draft opinions. Jeffer Mangels controlled the final versions of the opinions and their approval by Michelson. The final opinion letters for the SDI and Odora transactions were sent by Proskauer to Michelson in September and October, 2002.

Proskauer's motion in the trial court argued that the court should compel production of the withheld discovery documents on two grounds: because Michelson's action against Proskauer placed his privileged communications with Jeffer Mangels

---

[2] Proskauer's motion to compel sought further responses to request Nos. 1-18, 20-33, and 35-39.

4

directly at issue, and because disclosure of Michelson's privileged communications with Jeffer Mangels is essential to a fair adjudication of this case.

**Trial Court Refuses To Compel Production; Proskauer Seeks Writ Relief**

On October 12, 2012, the trial court refused to compel production of the requested documents containing communications between Michelson and Jeffer Mangels. On December 12, 2012, Proskauer petitioned this court for a writ of mandate or other appropriate relief compelling respondent court to require production of the requested documents. In the alternative, Proskauer seeks an order directing the trial court to dismiss Michelson's complaint and enter judgment in favor of Proskauer.

Proskauer identifies three issues raised by the respondent court's refusal to compel production of the requested evidence. First, Proskauer asks us to determine that Michelson has disclosed substantial portions of his privileged communications with Jeffer Mangels about the SDI and Odora investments, constituting a voluntary waiver of the attorney-client privilege with respect to the remainder of his communications with Jeffer Mangels about that subject. Second, Proskauer contends that Michelson's action against it places Jeffer Mangels's knowledge, state of mind, and communications with Michelson directly at issue, impliedly waiving the attorney-client privilege with respect to those communications. Third, Proskauer contends that it is fundamentally unfair to permit Michelson to maintain his action against it, withholding evidence that "is at the heart" of his claims while forcing Proskauer to defend itself without access to the withheld evidence. Based on Proskauer's petition, on January 31, 2013, this court issued an order to show cause. In response to the order to show cause, Michelson filed a return disputing important allegations of the petition.

The return contends that not all of Michelson's substantive communications with Proskauer concerning the SDI and Odora investments were made through Jeffer Mangels. It contends that Proskauer also made actionable misrepresentations and nondisclosures in eight written opinion letters, signed by Proskauer and issued directly to Michelson. And the return denies that Michelson has selectively disclosed his privileged communications

5

with Jeffer Mangels, that he has placed Jeffer Mangels's communications, knowledge, or state of mind directly at issue, or that he has waived his privilege with respect to his communications with Jeffer Mangels. The return agrees that writ review is appropriate to address discovery issues of first impression, but denies that in this case the petition presents any such issue.

Proskauer filed a reply to Michelson's return.[3]

**Standard of Review**

"A trial court's [ruling on] a motion to compel discovery is reviewed for abuse of discretion." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) "This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise. [Citations.]" (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158.)

The trial court abuses its discretion if it applies an erroneous legal standard, if it makes factual findings that are not supported by substantial evidence, or if its decision exceeds the bounds of reason and results in a miscarriage of justice in light of the applicable law and the relevant circumstances. (*Mejia v. City of Los Angeles*, *supra*, 156 Cal.App.4th at p. 158.) Issues of law are reviewed de novo. (*HLC Properties, Ltd. v. Superior* Court (2005) 35 Cal.4th 54, 60.) We review as a question of fact, under the substantial evidence standard, the question whether a waiver has occurred, unless the

---

[3] Michelson's return also suggests that the petition was not timely filed, because it was filed 61 days after the challenged ruling. While it is within the court's discretion to deny the matter without reaching the merits when relief has not been sought within the time allowed for an appeal if the challenged order were an appealable order (*Nelson v. Superior Court* (1986) 184 Cal.App.3d 444, 450), the absence of any record that Proskauer was served with notice of entry of the challenged ruling makes the applicable deadline 180 days, rather than 60 days, from the challenged ruling. (Cal. Rules of Court, rule 8.104(a)(1)(C), (a)(3); *American Property Management Corp. v. Superior Court* (2012) 206 Cal.App.4th 491, 499.) Moreover, nothing in the record suggests that prejudice resulted from any delay in filing the petition.

facts support just one conclusion. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196; *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 110.)

## DISCUSSION

The attorney-client privilege authorizes a client in an attorney-client relationship to refuse to disclose, and prevent others from disclosing, the client's confidential communications with his or her attorney. (Evid. Code, § 954.) Privileged communications are protected from disclosure regardless of their relevance or importance with respect to the proceeding. (*Costco Wholesale Corp. v. Superior Court*, *supra*, 47 Cal.4th at p. 732.) "'The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.'" (*Schlumberger Limited v. Superior Court* (1981) 115 Cal.App.3d 386, 392, quoting *City & County of S. F. v. Superior Court* (1951) 37 Cal.2d 227, 235.)

This broad rule is subject to conditions that define and narrow its application. A "confidential communication" that the attorney-client privilege protects from disclosure consists of information and advice transmitted between a client and his or her lawyer in the course of their attorney-client relationship, "and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interests of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." (Evid. Code, § 952.) However, a client's disclosure of a significant part of a communication that is protected by the attorney-client privilege waives the privilege with respect to that communication; but a disclosure that is itself privileged is not a waiver, nor is a disclosure that is reasonably necessary for the accomplishment of the purpose for which the lawyer was consulted. (Evid. Code, § 912.)

7

**A. The Record Does Not Show That Michelson Has Waived The Attorney-Client Privilege With Respect To His Communications With Jeffer Mangels By Disclosing Significant Portions Of His Communications With Jeffer Mangles.**

It is communications between Jeffer Mangels and Michelson that are at issue in this proceeding, not communications between Proskauer and Jeffer Mangels or Proskauer and Michelson. The attorney-client privilege does not prevent disclosure of communications between Proskauer and Jeffer Mangels, because Proskauer's relationship with Jeffer Mangels was neither that of a lawyer or a client. (Evid. Code, § 954 [privilege applies to communications between lawyer and client].) No privilege is claimed to apply to communications between Proskauer and Jeffer Mangels, both of whom had attorney-client relationships with Michelson.[4] Nor does the attorney-client privilege prevent disclosure of communications between Proskauer and Michelson. That is because "[t]here is no privilege . . . as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." (Evid. Code, § 958.)

Communications between Jeffer Mangels and Michelson, however, are in a different category. Michelson's attorney-client relationship with Jeffer Mangels provided him with a privilege to prevent disclosure of his confidential communications with Jeffer Mangels unless he waived that privilege. (Evid. Code, § 912.) Waiver might be shown by a number of possible circumstances—including by a voluntary disclosure that reveals a significant portion of a privileged communication. (Evid. Code, § 912, subd. (a).)

---

[4] Michelson's counsel confirmed in the trial court that Proskauer is entitled to discovery "about what was communicated between Proskauer and Jeffer Mangels," and also about "what Dr. Michelson believed, his independent state of mind." What they can't do, Michelson argued, "is get into privileged attorney-client communications" between Jeffer Mangels and Michelson.

8

Without such a disclosure, the fact that Michelson consulted and communicated with Jeffer Mangels as well as Proskauer about the SDI and Odora transactions could not alone constitute a waiver of his privilege respecting his communications with Jeffer Mangels. Waiver of a client's privilege to maintain the confidentiality of communications with his or her counsel does not result from the client's consultation with other attorneys about the same subject matter. (*Travelers Ins. Companies v. Superior Court* (1983) 143 Cal.App.3d 436, 445-446; *Miller v. Superior Court* (1980) 111 Cal.App.3d 390, 392-393 [exception stated in Evidence Code section 958 applies only "where the alleged breach is by the attorney from whom the information is sought"].) "Where, as here, the client has not alleged a breach by the attorney involved in the communication in question, the privilege for that communication remains intact." (*Miller v. Superior Court*, *supra*, 111 Cal.App.3d at p. 393.) Michelson's underlying action alleged no breach by Jeffer Mangels.

Proskauer argues that Michelson waived his privilege by disclosing significant portions of his communications with Jeffer Mangels "regarding the investments during the period leading up to the investments and Michelson's decision to take tax deductions with respect to them." For that reason, Proskauer contends, "[Michelson] should be compelled to disclose all contemporaneous communications relating to that subject."

The party claiming the privilege (in this case Michelson) has a threshold obligation to demonstrate the "existence [of] an attorney-client relationship as to the communication in question." (*Travelers Ins. Companies v. Superior Court*, *supra*, 143 Cal.App.3d at p. 448.) The burden then shifts to the opponent (Proskauer) to establish a basis for compelling disclosure—an exception to the privilege, a waiver of the privilege, or a lack of confidential intent. (Evid.Code, § 917; *Shannon v. Superior Court* (1990) 217 Cal.App.3d 986, 996.) But a determination that the privilege has been waived requires more than a mere assertion; it must be supported by substantial evidence. (See *Nowell v. Superior Court* (1963) 223 Cal.App.2d 652, 657; *Dickerson v. Superior Court* (1982) 135 Cal.App.3d 93, 100.)

9

Michelson's burden of establishing the prima facie existence of his attorney-client relationship with Jeffer Mangels is satisfied by the allegations of the Petition, and its undisputed recognition that the discovery sought by Proskauer is directed to disclosure of communications between Michelson and attorneys at Jeffer Mangels concerning the SDI and Odora investments. We therefore turn to Proskauer's attempt to show that Michelson has waived his right to rely on the privilege to prevent disclosure of his attorney-client communications with Jeffer Mangels.

To establish its claim of waiver, Proskauer has tendered documentation in this court in the form of exhibits to its petition. By permission of the trial court and this court, Proskauer has filed these documents under seal, providing the courts also with copies redacted to obscure portions claimed to contain confidential information. In this court Proskauer has also filed unredacted originals and redacted copies of its petition and its reply to Michelson's return.[5] We therefore have undertaken to examine the proffered documents for the purpose of determining the validity of Proskauer's contention that Michelson has disclosed significant portions of his communications with Jeffer Mangels regarding the SDI and Odora investments, thereby waiving his privilege to maintain the confidentiality of those communications.[6]

---

[5] The trial court's sealing order was based on Proskauer's unopposed motion, alleging that the documents submitted under seal contained arbitration testimony, documents, and orders, which had been designated as "confidential" pursuant to an earlier protective order because they contain proprietary business information relating to parties and non-parties whose rights would be prejudiced by their disclosure. This court granted the sealing order request based on a similar showing. Neither party challenges or otherwise addresses the propriety of the sealing orders.

[6] Evidence Code section 915 provides (with certain exceptions) that a court "may not require disclosure of information claimed to be privileged . . . in order to rule on the claim of privilege . . . ." (Evid.Code, § 915, subd. (a); *Costco Wholesale Corp. v. Superior Court*, *supra*, 47 Cal.4th at pp. 736, 740.) Here the privilege has been established; we are called upon to determine whether it has been waived, by reference to documents that Proskauer contends disclose significant portions of the otherwise-privileged communications, but Michelson contends do not. Because no holder of the privilege contends that the proffered documents are privileged or are beyond the authority

Based on our review of the proffered materials, we find no waiver.

Many of Proskauer's references are to portions of the exhibits that reflect statements by Michelson about his general intentions with respect to consultations with Proskauer and Jeffer Mangels, and his knowledge of specific facts and documents—but not the substance of any of his communications with Jeffer Mangels. If Michelson chose not to communicate directly with Proskauer, but instead to use Jeffer Mangels as a vehicle for his consultations with Proskauer about the SDI and Odora investments, that would not constitute evidence that Michelson disclosed significant portions of his communications with Jeffer Mangels. Nor would Jeffer Mangels's alleged participation with Proskauer in making revisions to Proskauer's draft opinion letters waive Michelson's privilege to withhold disclosure of his communications with Jeffer Mangels about the investments.

Neither the evidence admitted in the Michelson/Ernst & Young arbitration nor the results of that arbitration are probative of any voluntary disclosure of otherwise-privileged communications with Jeffer Mangels.[7] Proskauer contends that Michelson disclosed significant portions of the communications he seeks to protect when he was compelled to produce documents reflecting them in connection with the Ernst & Young arbitration. But the cited references are to documents authored by representatives of Ernst & Young, not by either Michelson or anyone at the Jeffer Mangels firm. To the extent they purport to reflect their authors' views about what Michelson or Jeffer Mangels might have communicated, it is clear that their authors' receipt and discussion of those communications was within the privilege, as "reasonably necessary for the

---

of this court to examine, Evidence Code section 915 does not apply. (See also *Costco Wholesale Corp. v. Superior Court*, *supra*, 47 Cal.4th at p. 740 [party claiming privilege may request in camera examination of communications that are claimed to be privileged].)

[7] Michelson contends (and Proskauer does not dispute) that the results of the arbitration with Ernst & Young have no collateral estoppel effect on these proceedings. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 834.)

accomplishment of the purpose for which [Jeffer Mangels] was consulted" by Michelson. (Evid. Code, § 912, subd. (d).) According to the return, the panel in the Ernst & Young arbitration compelled Michelson's production of certain privileged attorney-client communications between Michelson and Jeffer Mangels, and he thereafter asserted the privilege when Proskauer sought to obtain those documents from Ernst & Young and its attorneys.

We find nothing in the record to impeach the conclusion of the respondent court that no waiver resulted from Michelson's disclosure of portions of his privileged communications with Jeffer Mangels.

**B. Michelson Did Not Waive His Attorney-Client Privilege With Respect To His Communications With Jeffer Mangels By Placing The Substance Or Content Of Any Privileged Communication Directly At Issue.**

A party's attorney-client privilege is not waived by filing a lawsuit in which his communications with the attorney might be relevant to a disputed issue. (*Miller v. Superior Court*, *supra*, 111 Cal.App.3d 392-393.) That is true unless the lawsuit also places in issue the content of the communications, or the client's or his attorney's state of mind in making them. (*Lohman v. Superior Court* (1978) 81 Cal.App.3d 90, 97; *Merritt v. Superior Court* (1970) 9 Cal.App.3d 721, 730.) This principle does not change merely because the party engaged in confidential communications with more than one attorney.

In his underlying suit against Proskauer, Michelson contends that he was misled to his detriment by Proskauer's misrepresentations and omissions. Undoubtedly, the advice Michelson received from Jeffer Mangels on the same subject could be relevant to the question whether Michelson relied upon and was misled by Proskauer's alleged acts or omissions. But relevance is not enough. Mere relevance does not transform either the state of mind of anyone at the firm of Jeffer Mangels, or the contents of their communications with Michelson, into an issue to be proved and established in Michelson's case against Proskauer.

Privileged communications do not become discoverable simply by being relevant to issues raised in the litigation. (*Brockway v. State Bar* (1991) 53 Cal.3d 51, 63; *Schlumberger Limited v. Superior Court*, *supra*, 115 Cal.App.3d at p. 393.) The attorney-client privilege is not waived "'where the substance of the protected communication is not itself tendered in issue, but instead simply represents one of several forms of indirect evidence in the matter.'" (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 606.) Even when the attorney's state of mind is placed in issue by the pleading of a party seeking disclosure of the privileged materials, the client's privilege to prevent disclosure is not overcome. (*Aetna Casualty & Surety Co. v. Superior Court* (1984) 153 Cal.App.3d 467, 477 [fact that attorney's state of mind is placed at issue by pleading of party seeking disclosure of privileged materials does not waive privilege as to attorney's advice].)[8]

In *Lohman v. Superior Court*, the court held that a client's disclosure of communications with a former attorney on a subject relevant to her current claims did not waive her privilege to prevent disclosure of her conversations on that same subject with other attorneys. Even assuming the client had waived her privilege as to confidential communications with some of her attorneys, "she did not waive her privilege as to her communications with [another attorney] during his representation of her even though what she told [that attorney] related to the same subject matter or was identical to what she told her prior attorneys. [Citation.]." (81 Cal.App.3d at p. 97.)

---

[8] In *Merritt v. Superior Court*, *supra*, 9 Cal.App.3d 721, the court found that a plaintiff's allegations had placed the former attorney's state of mind in issue, and therefore had waived the attorney-client privilege, by alleging that the defendant insurer had so confused the former attorney as to render the former attorney unable to settle his claim. (*Id.* at p. 730.) That decision, however, is "'limited in its application to the *one situation* in which a client has placed in issue the *decisions, conclusions, and mental state of the attorney who will be called as a witness to prove such matters*.'" (*Mitchell v. Superior Court*, *supra*, 37 Cal.3d at 605.)

13

In *Miller v. Superior Court*, *supra*, 111 Cal.App.3d 390, the petitioner had sued her former attorney, claiming losses resulting from his negligence in undervaluing assets in an earlier marriage dissolution proceeding. The defendant attorney sought disclosure of her communications with her subsequent attorneys, contending that she had waived her attorney-client privilege with respect to those communications by filing a lawsuit in which her contact with other attorneys might show that she had discovered the alleged malpractice beyond the statute of limitations. In that case, just as in the case of *Lohman v. Superior Court*, the court held that the issue was what the plaintiff knew, not what she was told by her attorney: "[W]hat plaintiff knew was not privileged, but what she may have told her attorney was." (*Miller v. Superior Court*, *supra*, 111 Cal.App.3d at p. 394.)

In order to prevail in his underlying suit against Proskauer, Michelson's own state of mind and the grounds on which he decided to invest and take deductions with respect to the SDI and Odora investments will be at issue. But it is *his* state of mind that will be at issue, not the state of mind of the attorneys with whom he communicated at Jeffer Mangels. No privilege protects Michelson from disclosure of his own knowledge; but what Jeffer Mangels might have told him, and what he might have told Jeffer Mangels, remains privileged, even if Proskauer might find that information relevant and helpful to its defense. (*Miller v. Superior Court*, *supra*, 111 Cal.App.3d at p. 394.)

Michelson's pleadings do not place in issue the decisions, conclusions, or mental state of Jeffer Mangels, or the contents of his communications with anyone at that firm. Michelson's knowledge and understanding of the subject of his SDI and Odora investments is discoverable, but the contents of his communications with Jeffer Mangels on that subject was not put in issue by his suit against Proskauer, and therefore remains protected by the attorney-client privilege. (*Mitchell v. Superior Court*, *supra*, 37 Cal.3d at pp. 606-607.) The fact that Michelson's underlying claims place his own state of mind at issue does not place at issue any otherwise-privileged communications that might or might not have influenced his thinking or his conduct. If it did, little of the attorney-client privilege would remain. (*Schlumberger Limited v. Superior Court*, *supra*, 115

14

Cal.App.3d at p. 393 ["If tendering the issue of damages in a malpractice action waived the privilege, there would be no privilege, and Evidence Code section 954 would be meaningless."].)[9]

### CONCLUSION

The attorney-client privilege precludes discovery of Michelson's confidential communications with Jeffer Mangels arising from their attorney-client relationship. Because we find the attorney-client privilege was not waived, we do not consider whether the work product doctrine would also apply to preclude discovery of Michelson's communications with Jeffer Mangels. (*Costco Wholesale Corp. v. Superior Court*, *supra*, 47 Cal.4th 725, 732.) Nor do we address the impact that Michelson's assertion of the privilege will almost inevitably have on his ability to use particular items of evidence to establish his claims against Proskauer at trial—questions that may be addressed to the trial court by appropriate pretrial motions and objections during trial. Plainly, Michelson's privilege assertions during discovery should preclude his ability to later waive the privileges he has asserted.

On the record before us, the trial court did not err in declining to compel production of documents containing privileged communications between Michelson and Jeffer Mangels.

---

[9] Whether the attorney-client privilege would apply also to communications (if any) in which Jeffer Mangels's role is properly found to be nothing more than that of an agent for the transmission of messages between Proskauer and Michelson is an issue not raised by the evidence before us, and on which we express no opinion. (See *CostcoWholesale Corp. v. Superior Court*, *supra*, 47 Cal.4th at p. 735 [privilege does not apply when the attorney acts merely as a negotiator for client].)

15

## DISPOSITION

The petition is denied.  Costs are awarded to Real Parties in Interest.

NOT TO BE PUBLISHED.

                                        CHANEY, J.

We concur:


        MALLANO, P. J.


        JOHNSON, J.

16